STANDARD OIL COMPANY OF CALIFORNIA, Appellee,

v.

Rogers C. B. MORTON, the Secretary of the Interior of the United States, et al., Appellants.

No. 26939.

United States Court of Appeals, Ninth Circuit.

Nov. 3, 1971.

Dirk D. Snel (argued), George R. Hyde, Dept. of Justice, Shiro Kashiwa, Asst. Atty. Gen., Washington, D. C., G. Kent Edwards, U. S. Atty., Anchorage, Alaska, for appellants.

Robert W. Vater (argued), Eugene F. Wiles, of Delaney, Wiles, Moore, Hayes & Reitman, Anchorage. Alaska, for appellee.

Before WRIGHT and CHOY, Circuit Judges, and LINDBERG, District Judge.*

PER CURIAM:

Standard Oil of California is the owner of an undivided half interest in five federal oil and gas leases issued by the Bureau of Land Management of the United States Department of the Interior in 1958. The issue in controversy in the present action is the interpretation to be accorded the rental provisions of these leases. The rental rate provisions in dispute are identical in each lease:

"(b) If the lands are wholly or partly within the known geologic structure of a *producing oil or gas field*:

(i) Beginning with the first lease year after 30 days notice that all or part of the land is included in such a structure and for each year thereafter, prior to a discovery of oil or gas on the lands leased, $1 per acre or fraction thereof.

(ii) If this lease is committed to an approved cooperative or unit plan which includes a well capable of pro-

---

* The Honorable William J. Lindberg, Senior United States District Judge, Western District of Washington, sitting by designation.

ducing oil or gas and contains a general provision for allocation of production, the rental prescribed for the respective lease years in subparagraph (a) [i. e., 50¢ per acre] shall apply to the acreage not within a participating area * * *."1

A year after the five leases were originally issued, they were pledged to an approved unit development called the Soldotna Creek Unit Area. Unit development of an oil and gas field is common practice. Its purpose is to avoid economic waste and the haphazard development of the land's natural resources. A unit is made up of both "participating" and "nonparticipating" lands. The former areas share in the actual development activities and expenses dictated by the unit agreement, and they participate in the benefits produced. No rent is paid on participating acreage; instead the government collects payments on a royalty basis. A "nonparticipating" area is still in the unit, but for purposes of the overall unit plan it is not developed for purposes of production. Rent is paid on nonparticipating acreage as agreed upon in the underlying lease.

On January 2, 1967 part of the nonparticipating acreage covered by each of the five leases in dispute was eliminated by contraction from the Soldotna Creek Unit area. Several months thereafter the Chief Minerals Adjudicator of the Anchorage Land Office issued a decision raising the rent on the eliminated acreage from 50 cents per acre to $1.00 per acre. The view of the Adjudicator was that once the acreage was contracted out of the cooperative unit it no longer qualified for the rent basis set out in paragraph (ii) above, but was subject to the rent provision of paragraph (i). This view was affirmed by the Secretary when Standard Oil pursued an ad-

---

1. The rent and royalty clauses in their entirety provided as follows: Section 2—The lessee agrees:

* * * * *

(d) Rentals and Royalties.—(1) to pay rentals and royalties in amount or value of production removed or sold from the leased lands as follows:

Rentals.—To pay the lessor in advance an annual rental at the following rates:

(a) If the lands are wholly outside the known geologic structure of a producing oil or gas field:

(i) For the first lease year, a rental of 50 cents per acre or fraction thereof, or if the lands are in Alaska, 25 cents per acre or fraction thereof.

(ii) For the second and third lease years, no rental.

(iii) For the fourth and fifth years, 25 cents per acre or fraction thereof.

(iv) For the sixth and each succeeding year, 50 cents per acre or fraction thereof, or if the lands are in Alaska, 25 cents per acre or fraction thereof.*

(b) If the lands are wholly or partly within the known geologic structure of a producing oil or gas field:

(i) Beginning with the first lease year after 30 days notice that all or part of the land is included in such a structure and for each year thereafter, prior to a discovery of oil or gas on the lands lease, $1 per acre or fraction thereof.

(ii) If this lease is committed to an approved cooperative or unit plan which includes a well capable of producing oil or gas and contains a general provision for allocation of production, the rental prescribed for the respective lease years in subparagraph (a) of this section shall apply to the acreage not within a participating area, except that the rental for the second and third lease years for such acreage shall be 25 cents per acre or fraction thereof.

Minimum Royalty.—Commencing on the lease year beginning on or after a discovery on the leased land, to pay the lessor in lieu of rental, a minimum royalty of $1 per acre or fraction thereof at the expiration of each lease year, or the difference between the actual royalty paid during the year if less than $1 per acre and the prescribed minimum royalty of $1 per acre, provided that if this lease is unitized, the minimum royalty shall be payable only on the participating acreage and rental shall be payable on the nonparticipating acreage as provided in subparagraph (b) (ii) above.

* The parties agree that since the leases were issued pursuant to offers which were pending on July 3, 1958, they are subject to the provisions of the Act of July 3, 1958, Pub.L.No.85-505, § 10, 72 Stat. 324, which changed the rental rate for the sixth and succeeding years for Alaska leases to conform to the 50 cents per acre rate applicable to the rest of the States.

ministrative appeal. Standard then timely filed this action in the District Court for a review of the Secretary's decision. Both parties moved for summary judgment. The District Court found in favor of Standard Oil and reversed the determination of the Secretary of the Interior. Standard Oil Company of California v. Hickel et al., 317 F.Supp. 1192 (D.Alaska, 1970). This appeal followed.

Had the entire acreage under each of these leases been contracted out of the cooperative unit, it is clear that the $1.-00 per acre rental would be applicable. The district judge concluded, however, that the draftsman of the federal lease had not made provision for the possibility that only part of the acreage under a lease would be affected by contraction while the lease itself would remain pledged to the approved unit development. He charged the Secretary as draftsman of the lease with the confusion resulting from this oversight and ambiguity. Under the general rules of contract construction, he construed the leases against the draftsman and his agents. Reading Steel Casting Co. v. United States, 268 U.S. 186, 188, 45 S.Ct. 469, 69 L.Ed. 907 (1925); Reconstruction Finance Corp. v. Sullivan Mining Co., 230 F.2d 247, 250 (9th Cir. 1956).

We have considered the entire record in this case, and we affirm the District Court for those reasons set out in Judge Plummer's well considered opinion, Standard Oil Company of California v. Hickel et al., 317 F.Supp. 1192. Granting that great deference is due the Secretary's interpretations of the regulatory scheme under the Mineral Leasing Act of 1920, Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965) we still agree with the district court that the Secretary's interpretation of the leases in point is unsupported.[2] This is especially true, in light of past administrative practice and prior regulatory language, with respect to his effort to

interpret the word "leases" to mean "lands" in paragraph (ii) of the rental provisions. See T. Jack Foster, 75 I.D. 81 (1968).

The decision of the District Court is affirmed.

---

2. The rental provisions corresponded with those provided in 43 C.F.R. 192.80 (1954), the administrative regulation then in force.