**GULF OIL CORPORATION** et al.,
Plaintiffs,

v.

The Honorable Rogers C. B. **MORTON**, Secretary of the Interior of the United States of America, et al., Defendants.

No. 71–1669.

United States District Court,
C. D. California.

June 21, 1972.

Gibson, Dunn & Crutcher, Samuel O. Pruitt, Jr., G. Edward Fitzgerald, R. Randall Huff, Los Angeles, Cal., for plaintiffs.

Myles E. Flint and Andrew F. Walch, Department of Justice, Washington, D. C., for defendants; William D. Keller, U. S. Atty., Los Angeles, Cal., of counsel.

George P. Kading, County Counsel, County of Santa Barbara, Marvin Levine, Melbourne B. Weddle, A. Barry Cappello, City Atty. City of Santa Barbara, Santa Barbara, Cal., A. L. Wirin, Fred Okrand, Los Angeles, Cal., amici curiae.

## MEMORANDUM OF DECISION

WHELAN, District Judge.

This is an action for relief in the nature of mandamus and declaratory relief whereby plaintiffs, who are lessees under leases granted by the United States, seek an order requiring defendants to vacate and set aside the 1971 suspension order issued by defendant Morton. The suspension order suspended the right of plaintiffs to drill for oil on their respective leased premises located in the Santa Barbara Channel in this District. Plaintiffs pray for a judgment that the initial term of the leases be extended by the Court for the period of time now necessary for the completion of an exploratory well on each of such leases.

Plaintiffs also seek an order requiring defendants to act upon and grant forthwith all applications for drilling permits under such leases.

The matter came on for trial and after the close of evidence the case was orally argued by counsel for the parties as well as by amicus curiae. Thereupon the case was submitted for decision.

This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. §§ 2201–2202, 5 U.S.C. §§ 701–706, 28 U.S.C. § 1361, 43 U.S.C. § 1333(b), and under the Fifth Amendment to the Constitution of the United States. The matter in controversy exceeds, exclusive of interest and costs, the sum of $10,000. Section 4(b) of the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333(b), provides that the United States District Courts shall have original jurisdiction of cases in controversy arising out of or in connection with any operations conducted on the Outer Continental Shelf.

This Court is aware, of course, of the great public interest in the matter of oil well drilling in the Santa Barbara Channel off the coast of Santa Barbara County aroused by the "blow-out" of one of the oil wells on a lease [not here involved] in the Santa Barbara Channel in 1969 and of the official position of the County of Santa Barbara against such drilling. However, we are not here concerned with matters which developed as a result of such "blow-out." Here we are and must be concerned solely with whether or not defendant Morton had the authority to suspend drilling operations on the leases in question. In determining whether he had such authority, we must look to the provisions of the Outer Continental Shelf Lands Act and the regulations authorized thereunder and the leases made in accordance with such Act and regulations.

The leases were issued during the period from February 1 to April 1, 1968, inclusive, and at the time the leases were executed plaintiffs paid to the United States an aggregate consideration of $152,000,000. In accordance with the terms of the leases plaintiffs

have since paid rentals to the United States in an aggregate amount of more than $750,000, and in addition plaintiffs have incurred additional costs in connection with those leases on which exploratory drilling has been conducted. Each of the leases provides for development during an initial term of five years and for so long thereafter as oil or gas may be produced in paying quantities.

As a result of the above-mentioned "blow-out" on January 28, 1969, the then Secretary of the Interior did on February 7, 1969, send telegrams to those oil companies then conducting operations in the Santa Barbara Channel directing that they cease operations on specified leases. On December 1, 1969, the Department of Interior extended the initial terms of six leases on which lessees had been ordered on February 7, 1969, to cease operations.

On April 19, 1971, defendant Secretary of the Interior notified officers of each of the plaintiffs herein that all operations under the leases involved in this case would be suspended, and on April 21, 1971, plaintiffs were formally notified that all operations on the leases involved in this case were suspended until January 2, 1973.

Prior to April 21, 1971, the respective plaintiffs had filed applications for drilling permits on each of the leases here involved. The applications had not been acted upon prior to April 21, 1971, and have never been acted upon since that date because of the suspension order. Had the permits been granted when the applications were filed, exploratory drilling within the period of the respective leases could have been completed. The evidence, the objection to which is now overruled, establishes that since the dates of the applications and of the suspension order conditions concerning availability of drilling equipment have changed and as a result of such order plaintiffs will now require 32 months to complete exploratory drilling from the date the permits issue. At this time there are no wells on any of the leases involved capable of producing oil and gas.

The Secretary of Interior suspended operations on the leases in order to give Congress the opportunity to act upon a bill which was submitted to Congress by the Secretary on April 21, 1971, the same day the leases were suspended. In the Secretary's decision it is stated that "the suspension until January 2, 1973, was issued to permit the Congress to consider pending legislation for the termination of 35 leases and for the establishment of a national energy reserve and to preclude the possible events, enumerated in the memorandum of the Geological Survey, which would frustrate any Congressional action" under the Secretary's proposed bill. The Secretary further stated that the order "was issued in the interest of conservation under 30 C.F.R. 250.12(d) (1)." The Secretary further stated that "the authority vested in me by Section 5(a) (1) of the Outer Continental Shelf Lands Act includes the authority to suspend operations on leases in the interest of conservation in order to permit the Congress to consider pending legislation which I have recommended."

█ This Court holds that the Secretary did not have the power to suspend operations on leases in order to permit the Congress to consider pending legislation which the Secretary has recommended.

The action of the Secretary exceeded his authority under the terms of the statute and regulation and the leases, for the suspensory action is not consistent with the purpose of the Outer Continental Shelf Lands Act. That Act, in Section 5(a) (1) thereof, gives to the Secretary the right to prescribe only such rules and regulations as may be necessary to carry out the provisions of the Act. Section 5(a) (1) does not authorize the Secretary of the Interior to carry out the provisions of any statute other than the Outer Continental Shelf

Lands Act and it does not authorize the Secretary to issue any order or rule or regulation for the purpose of permitting his legislative proposal to be considered by Congress.

The statute by its terms limits the suspensory powers of the Secretary of Interior. In Section 12(c), upon a recommendation of the Secretary of Defense, the Secretary of Defense may during a state of war or national emergency declared by the Congress or the President suspend operations. Under Section 12(d) the Secretary of Defense with the approval of the President may designate that part of the Outer Continental Shelf needed for national defense. In the event of such designation, no explorations or operations on any lease may be conducted without the concurrence of the Secretary of Defense. In the event of any suspension under Section 12(c) or Section 12(d), just compensation shall be paid to any lessee for injuries resulting from such suspension. It is only under Section 12(d) that the term of the lease is to be extended by the amount of any suspension period.

The underlying purpose of the Outer Continental Shelf Lands Act is set forth in Section 8(a) thereof. Section 8(a) of the Act makes clear that the Secretary is authorized to grant leases to meet "the urgent need for further exploration and development of the oil and gas deposits of the submerged lands of the Outer Continental Shelf." Further, Section 4(a) (1) of the Act states that the jurisdiction of the United States is extended to the Outer Continental Shelf for the purpose of exploring for, developing, removing and transporting resources therefrom and that mineral leases shall be maintained or issued only under the provisions of the Act.

The leases in question have an express provision which states that they are entered into under and pursuant to the terms and provisions of the Outer Continental Shelf Act and to all lawful and reasonable regulations of the Secretary of the Interior *when not inconsistent with any express and specific provisions herein.* [Emphasis added.] The leases

require the particular lessee to exercise reasonable diligence in drilling and producing the wells. Section 5(b) (1) requires the owner of a lease to comply with the provisions of the Act or of the lease or of the regulations in force and effect on the date of the issuance of the lease.

The Secretary has the power to promulgate rules and regulations necessary to carry out the provisions of the Act, i. e., the exploring for, developing, removing and transporting resources from the Outer Continental Shelf or such rules and regulations as may be necessary and proper in order to provide for the prevention of waste and conservation of the natural resources of the Outer Continental Shelf. Such latter mentioned rules and regulations apply to a lease issued under the provisions of the Act, but here the Secretary has made his suspension order solely for the purpose of letting Congress determine whether or not it will pass a bill which will prevent explorations on the leases here involved with a concurrent requirement of payment of just compensation to the owners of the leases. Such bill would provide also for the setting up of a petroleum reserve. The order of the Secretary suspending operations on these leases is in direct conflict with the purposes of the Outer Continental Shelf Act.

It cannot be successfully urged that the order of the Secretary is in the interest of conservation within the meaning of Section 5(a) (1) of the Act. The decision of the Secretary adopts the decision of the Acting Regional Director of the Geological Survey, which latter decision states that where it is intended to carry on oil drilling the risks inherent in such drilling are acceptable. The regulations promulgated by the Secretary, other than the regulations implementing Section 12 of the Act, provide only for the suspension of "operations" where suspension is necessary to prevent damage or waste of any natural resources or injury to life or property or upon application of lessees.

This Court considers that the only suspension orders which can be issued

by the Secretary are those provided for by Section 12 of the Act or those providing for the suspension of actual operations when requested by the lessee or when necessary to prevent waste or damage to person or property.

■ While it is true that generally great deference is due the Secretary's interpretation under the Act, the Secretary's interpretation must be supported by the provisions of the Act. See Standard Oil Company of California v. Morton, 450 F.2d 493, 495 (9th Cir. 1971). Also see Superior Oil Company v. Udall, 133 U.S.App.D.C. 198, 409 F.2d 1115, 1121 (1969). This Court is of the opinion that the Secretary's suspensory order is not so supported.

This Court is of the opinion that under the circumstances of this case the Secretary does not have the power to extend the leases in question unless ordered by the Court so to do in order to effect equity. The Congressional intent would seem to give the right of extension of a lease only where there has been a suspension of the right of exploration or operations as provided for in Section 12(d) of the Act. Section 8(b) expressly defines the term of the lease to be for a period of five years and as long thereafter as oil or gas may be produced from the area in paying quantities or drilling or well re-working operations as approved by the Secretary. Where the suspension order is invalid an extension by the Secretary, as here, would in effect lengthen the term of the leases beyond the time fixed by the Act.

■ Because the mere decision that the suspension order was invalidly made cannot afford the plaintiffs appropriate relief in that they cannot complete exploratory wells within the time allowed by the leases as written, equity requires that this Court not only order the defendants to vacate the order of suspension and to grant plaintiffs' applications for drilling permits as soon as this Court signs its judgment, but also that the Court order defendants to permit plaintiffs to exercise their rights under the leases respectively and to allow them to complete exploratory drilling during the period expiring 32 months after the judgment of this Court becomes final. This Court has authority to require the Secretary to comply with the statute and the regulations consistent with the statute. See Standard Oil Company of California v. Morton, *supra*. Furthermore, the Court may grant equitable relief to one damaged by the action of the Secretary contrary to the requirements of the statute. See Superior Oil Company v. Udall, *supra*.

■ It is necessary that the injunctive relief be granted to plaintiffs herein, for the government is not liable in money damages for the act of the Secretary done without authority.