STATE of Alaska, DEPARTMENT OF
HIGHWAYS, Appellant,

v.

Gordon E. GREEN, Viola Green, A. Lee
Goodman, Joan D. Goodman, Appellees.

No. 3184.

Supreme Court of Alaska.

Sept. 1, 1978.

Eugene Wiles, Robert L. Eastaugh and Stephen M. Ellis, Delaney, Wiles, Moore, Hayes & Reitman, Inc., Anchorage, for appellant.

Murphy L. Clark, Anchorage, for appellees Green.

David B. Loutrel, Croft, Thurlow, Loutrel & Duggan, Anchorage, for appellees Goodman.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Justice.

The state brought eminent domain actions [1] in the superior court seeking portions

---

1. The state's complaints were filed July 9, 1974. Initially, the complaints sought a 50-foot right-of-way and a 20-foot slope easement (for lateral support of the roadway). The state filed amended complaints on November 12, 1974. The amended complaints omitted the slope easement and instead sought to acquire:

(1) an estate in fee simple for the 50 foot right-of-way on both the Green and Goodman parcels (excluding minerals lying more than 100 vertical feet below the roadway's surface), and

(2) a temporary construction easement on and over additional portions of the Green and Goodman properties.

of the lots owned by the Greens and Goodmans[2] for use in the planned widening of Tudor Road in Anchorage. The state claimed a right-of-way extending 50 feet on either side of Tudor Road's center line. The Greens and Goodmans argued that express provisions in the patents to their lots limited the state's right-of-way to 33 feet on either side of the center line. After the state had amended its complaints, the parties stipulated to consolidation of the cases for determining liability issues and also stipulated to resolution of right-of-way issues by summary judgment if the parties could agree upon the facts.[3] Subsequently, both the state and the property owners moved for summary judgment. The superior court granted summary judgment in favor of the Greens and Goodmans on all liability issues.[4] The state then brought this appeal.

A brief history of the Green and Goodman parcels is necessary to an understanding of the parties' contentions in this appeal. The lots were originally owned by the United States and were among lands withdrawn "from all forms of appropriation under the public-land laws"[5] by the Secretary of the Interior in 1942. Pursuant to that withdrawal order, the lands were reserved for use by the War Department.[6] In 1949 the Secretary of the Interior, acting pursuant to executive order, terminated War Department jurisdiction but provided that certain described lands, including the property which was eventually conveyed to the Greens and Goodmans, "shall not become subject to the initiation of any rights or to any disposition under the public land laws until it is so provided by a order of classification . . . opening the lands to application under the Small Tract Act . . . ."[7] Such a classification order was issued the following year;[8] under that order, lots 11 (Green) and 12 (Goodman) were made available for small tract disposition.

The Goodmans and Greens contended that their predecessor patentees first occupied the lots pursuant to Small Tract Act leases and subsequently received patents to the land from the federal government.[9] The patents contained substantially identical reservations, including the following language:

> The reservation of a right-of-way for roads, roadways, highways, tramways, trails, bridges, and appurtenant structures constructed or to be constructed by or under any authority of the United States or by any state created out of the territory of Alaska in accordance with the Act of July 24, 1947 (61 Stat. 418, 47 [48] U.S.C., § 321[d]).

The following typewritten language was added to the printed patent form:

> This patent is subject to a right-of-way not exceeding thirty-three (33) feet in width, for roadway and public utilities

2. The Kerkoves and Urbaneks answered the state's complaint and alleged that "they are owners of a substantial property interest" in the Goodman parcel. They have not appeared in this appeal.

3. Five separate actions originally were consolidated; two of these involved the Green and Goodman properties. The parties' stipulation expressly reserved compensation and damages issues for separate trial or determination "on an individual basis."

4. The superior court ordered summary judgment for the property owners on July 26, 1976. Final judgment was entered on September 21, 1976, for the Greens, on September 27, 1976, for the Goodmans, and on October 28, 1976, for the Kerkoves and Urbaneks.

5. Public Land Order 5 (June 26, 1942).

6. *Id.*

7. P.L.O. 615 (November 8, 1949; published in Federal Register, November 16, 1949).

8. Small Tract Classification No. 22 (March 23, 1950).

9. The Goodmans allege that their predecessor patentee occupied lot 12 on April 21, 1950, and received a patent on April 28, 1952. The Green parcel (lot 11) was leased from the United States on September 1, 1952, and patent was granted on December 1, 1953.

purposes, being located along the north and west boundaries of said land.[10]

After the issuance of Small Tract Classification Order No. 22 but before issuance of patents to lots 11 and 12, the Secretary of the Interior issued Secretarial Order No. 2665 [11] establishing the width of public highways in Alaska which were under the jurisdiction of the Secretary of the Interior. For "local roads"—all roads not classified as "through roads" or "feeder roads"—the width set by Secretarial Order No. 2665 was 50 feet on each side of the road's center line. Tudor Road was not among the named "through" or "feeder" roads.[12]

In light of this administrative order and the chronology of events relating to these lands, appellant State of Alaska takes the position that the Green and Goodman parcels were subject to a 100 foot right-of-way for Tudor Road. Specifically, the state argues that the planning and construction of Tudor Road by the United States effectively appropriated land lying in the right-of-way and reserved such right-of-way to the United States. Prior to issuance of patents to lots 11 (Green) and 12 (Goodman), the 100 foot right-of-way reservation for local roads established by Secretarial Order No. 2665 became effective. Thus, reasons the

state, a right-of-way extending 50 feet from the Tudor Road center line onto portions of lots 11 and 12 was validly reserved prior to the time private parties acquired vested rights in the lots through issuance of the patents. As an alternative to its motion for summary judgment, the state asserted that a genuine issue of material fact existed with respect to the Goodman property, i. e., that the date of Tudor Road's construction must be established before the respective rights of the parties could be determined.

The Greens argue that their property was unaffected by the Secretary's 100 foot right-of-way designation because regulations under the Small Tract Act had segregated these parcels from the operation of general right-of-way provisions prior to the date of issuance of Secretarial Order No. 2665. Thus, only easements reserved by authority of the Small Tract Act apply. The Goodmans reiterate the Greens' position, but they further contend that their predecessor patentee had acquired vested rights under his lease pursuant to Small Tract Classification No. 22. Since the patent was obtained by operation of the same lease provisions, vested patent rights relate back to the date of lease for purposes of determining the applicable right-of-way.

---

**10.** The quoted language appeared in the patent to the Goodmans' property. The typewritten language in the patent to the Greens' property stated that the right-of-way was located along the north and east boundaries of lot 11.

**11.** Secretarial Order No. 2665 reads, in part:
RIGHTS–OF–WAY FOR HIGHWAYS IN ALASKA
 Section 1. *Purpose.* (a) The purpose of this order is to (1) fix the width of all public highways in Alaska established or maintained under the jurisdiction of the Secretary of the Interior and (2) prescribe a uniform procedure for the establishment of rights-of-way or easements over or across the public lands of such highways. Authority for these actions is contained in section 2 of the act of June 30, 1932 (47 Stat. 446, 48 U.S.C. 321a).
 Sec. 2. *Width of Public Highways.* (a) The width of the public highways in Alaska shall be as follows:
(1) For through roads: The Alaska Highway shall extend 300 feet on each side of the center line thereof. [Other highways listed]

shall extend 150 feet on each side of the center line thereof.

. . . . .

(3) For local roads: All public roads not classified as through roads or feeder roads shall extend 50 feet on each side of the center line thereof.

**12.** The relevant chronology is as follows:

| | |
|---|---|
| Small Tract Classification Order No. 22 | March 23, 1950 |
| Alleged date of "entry" on Goodman parcel pursuant to Small Tract Order No. 22 | April 12, 1950 |
| Secretarial Order No. 2665 | October 20, 1951 (date of publication in Federal Register) |
| Date of patent to Goodmans' predecessor | April 28, 1952 |
| Lease date of Green parcel under Small Tract Order No. 22 | September 1, 1952 |
| Date of patent to Greens' predecessor | December 1, 1953 |

Because the issues regarding the Green and Goodman parcels differ somewhat, we shall discuss the two parcels separately.

The state argues that Tudor Road had been appropriated by the United States prior to any interest vesting in the Greens' predecessor patentee. Thus, the state contends, Secretarial Order No. 2665 established a 50 foot right-of-way for Tudor Road in the same manner as it did for other "local roads."

The Greens do not dispute the federal government's appropriation of Tudor Road to the extent of the actual roadway and abutting shoulder.[13] The Greens also acknowledge that their predecessor in interest was not in possession of lot 11 until after the original construction of Tudor Road.[14] In addition, they agree with the state that Secretarial Order No. 2665 is valid within its proper sphere of application; but they contend that neither the statutory authority upon which Secretarial Order No. 2665 is based nor the order itself is applicable to lands classified under the Small Tract Act.

The Greens rely principally on this court's opinion in *State, Department of Highways v. Crosby*, 410 P.2d 724 (Alaska 1966), to support their contention that 48 U.S.C. § 321a (1946) and Secretarial Order No. 2665 were inapplicable to lands classified under the Small Tract Act.[15] In *Crosby* this court determined that another statute,

48 U.S.C. § 321d (1952), was not applicable to lands leased or sold pursuant to the Small Tract Act. The court relied upon congressional intent as reflected in the legislative history of the Act of July 24, 1947, codified as 48 U.S.C. § 321d (1952), and concluded:

[T]he 1974 Act, in speaking of lands "taken up, entered, or located," had reference only to those public land laws where discretionary authority on the part of a government officer or agency to impose reservations for rights-of-way was absent, and was not intended to apply to those laws where such authority existed.[16]

The Small Tract Act gave the Secretary of the Interior discretionary authority to sell or lease small tracts "under such rules and regulations as he may prescribe", and the Secretary had issued regulations prescribing a 33 foot right-of-way without providing for the right-of-way requirements contained in 48 U.S.C. § 321d (1952). Accordingly, the general right-of-way reservation in 48 U.S.C. § 321d (1952) did not apply and only the discretionary right-of-way applicable specifically to Small Tract Act lands was operative.

In the case at bar, the state does not rely upon 48 U.S.C. § 321d (1952); instead, it bases its argument exclusively on 48 U.S.C. § 321a (1952) and Secretarial Order No. 2665.[17] The statute involved in *Crosby* was

---

**13.** The Greens devote a substantial portion of their brief to the argument that the state's position is incorrect because appropriation of land for a roadway does not reserve a right-of-way beyond the width of the roadway and abutting shoulder as actually established by expenditure of funds or construction of the road. As we understand the briefs, however, the state does not argue that the 50 foot right-of-way was appropriated by the United States. Instead, the state contends that once Tudor Road was appropriated, Secretarial Order No. 2665 operated to establish a 50 foot right-of-way—regardless of Tudor Road's original width.

**14.** The relevant chronology for the Greens' property is as follows:

Secretarial Order No. 2665 — October 20, 1951 (date of publication in the Federal Register)

| | |
|---|---|
| Application for small tract lease by the Greens' predecessor in interest | August 26, 1952 |
| Lease issued to the Greens' predecessor in interest | September 1, 1952 |
| Patent issued to the Greens' predecessor in interest for lot 11 | December 1, 1953 |

**15.** Act of June 1, 1938, 52 Stat. 609, 43 U.S.C. § 682a (1964). The Small Tract Act was made applicable to Alaska by the Act of July 14, 1945, 59 Stat. 467.

**16.** *State, Dept. of Highways v. Crosby*, 410 P.2d 724, 727 (Alaska 1966).

**17.** The Greens acknowledge that Secretarial Order No. 2665 was issued pursuant to the Act of June 30, 1932, c. 320, § 2, 47 Stat. 446, 48 U.S.C. § 321a (1946). That section directed the Secretary of the Interior to "execute or cause

enacted July 24, 1947; the statute which authorized Secretarial Order No. 2665 had been enacted 15 years earlier on June 30, 1932. In addition, the subjects addressed by § 321a differ markedly from those addressed by § 321d. Section 321a governs the transfer of road construction and maintenance functions to the Secretary while section 321d requires certain right-of-way reservations to be included in "all patents for lands hereafter taken up, entered, or located in the Territory of Alaska." The *Crosby* decision held that right-of-way reservations under 48 U.S.C. § 321d (1952) did not apply to small tracts because Congress intended § 321d to operate only if no discretionary authority was available to reserve rights-of-way when public lands were "taken up, entered, or located." *Crosby* did not conclude that right-of-way reservations under the Small Tract Act were exclusive or that additional discretionary right-of-way reservations were precluded.

■ Neither the Greens nor the Goodmans have cited any authority indicating the Secretary's intention to exclude other potentially applicable right-of-way reservations. Administrative regulations under the Small Tract Act stated:

> Unless otherwise provided in the classification order, the leased land will be subject to a right-of-way of not to exceed 33 feet in width along the boundaries of the tract for street and road purposes and for public utilities. The location of such access streets or roads may be indicated on a working copy of the official plat . . .[18]

Thus, while the regulation may be read restrictively ("Unless otherwise provided in the classification order . . . not to exceed 33 feet in width"), its apparent objective was to provide rights-of-way for "access streets or roads" and for public utilities, not to eliminate other potentially applicable reservations. As the state emphasizes, this language and the parallel language of the lease[19] suggest the Secretary's concern with reserving access for other lots within the boundaries of the small tract lease area.[20] Such provisions do not indicate that other rights-of-way should be precluded. Nor does the language of the Small Tract Act or its legislative history show Congress' intention to preclude operation of all right-of-way reservations except those specifically applying to small tracts.

■ In the absence of some indication that Congress intended right-of-way reservations under the Small Tract Act to be exclusive or that rights-of-way reserved pursuant to the Small Tract Act are incompatible with other potentially applicable rights-of-way, we conclude that the various discretionary rights-of-way must be allowed

to be executed all laws pertaining to the construction and maintenance of roads . . . in Alaska."

Under the provisions of 48 U.S.C. § 321a (1946), all appropriations made and available for expenditure by the board of road commissioners under the Secretary of the Army were transferred to the Secretary of the Interior "to be thereafter administered in accordance with the provisions of sections 321a–321d of this title." *Id.* The board of road commissioners was also "directed to turn over" property for the use of the Secretary of the Interior in constructing and maintaining roads and other works. *Id.*

Section 321a was repealed by Pub.L. 86–70, § 21(d)(7), June 25, 1959, 73 Stat. 146, effective July 1, 1959.

We note that both this court and the federal courts have treated Secretarial Order No. 2665 as valid, although no direct challenge to its validity has been raised. *See Myers v. United States,* 210 F.Supp. 695 (D.Alaska 1962);

*Myers v. United States,* 378 F.2d 696, 180 Ct.Cl. 521 (1967).

**18.** 43 C.F.R. § 257.16(c) (1954).

**19.** The lease for lot 11 provided, in part:

> (m) That this lease is taken subject to the rights of others to cross the leased premises on, or as near as practicable to, the exterior boundaries thereof, as a means of ingress or egress to or from other lands leased under authority of this act. Whenever necessary, the Regional Administrator may make final decision as to the location of rights-of-way. It has been determined that the land leased herein is subject to a 33-foot right-of-way along the north and west boundaries.

**20.** It should be noted that the case at bar involves rights-of-way for a bordering "local" road rather than rights-of-way for streets or utilities serving interior lots.

to operate together.[21] Thus, unless the 50 foot right-of-way created by Secretarial Order No. 2655 is irreconcilable with the 33 foot right-of-way created by regulations[22] under the Small Tract Act, the Green's property is subject to the 50 foot right-of-way.

The Greens also argue that even if Secretarial Order No. 2665 applies to land conveyed pursuant to the Small Tract Act, the order establishing a 50 foot right-of-way and the administrative regulation establishing a 33 foot right-of-way must be construed together. The Greens contend that only by limiting the right-of-way to 33 feet in width will both the order and the regulation be permitted to operate without nullification of one or the other; in addition, the Greens argue, the 33 foot right-of-way is more specific and should control when applicable reservations are in conflict. The state counters by saying that the 50 foot right-of-way established by Secretarial Order No. 2665 is consistent with the 33 foot right-of-way established by administrative regulation because the purposes served by the two rights-of-way are different.

▪ While we agree with the Greens that the 33 foot right-of-way reservation is more specific, it does not follow that the 50 foot right-of-way may not operate. That is, language of the administrative regulation, classification order and small tract patent show a progressively narrower focus on the Greens' lot; thus, the 33 foot right-of-way reservation appearing in the patent is more specific than the general right-of-way reservation contained in Secretarial Order No. 2665. Nevertheless, the rule of construction favoring specific provisions over general provisions need not be invoked unless it is impossible to give effect to both provisions. As Professor Sutherland explains:

> Where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, *the two should be harmonized if possible*; but if there is any conflict, the latter will prevail, regardless of whether it was passed prior to the general statute, unless it appears that the legislature intended to make the general act controlling.[23] (emphasis added)

We think there is no serious conflict between the two overlapping rights-of-way and no need to resort to the rule of construction favoring specific provisions over general provisions.

▪ The Greens correctly point out that the 50 foot right-of-way makes the 33

---

**21.** The Department of the Interior also contemplated the possibility of non-exclusive, overlapping rights-of-way from more than one source. The Assistant Solicitor, Department of the Interior stated:

> [T]here could be an overlapping of rights-of-way over a tract of land as where a right-of-way generally provided for under the act of 1947 . . . and specifically referred to in a reservation designating a certain width, could intersect or cross an access boundary road reserved under authority of 43 C.F.R. 257.17(b).

Memorandum of Opinion of the Solicitor, Department of the Interior, 1–59–2242.10 (Oct. 9, 1959). Although the memorandum is addressed to the express reservation of rights-of-way considered in *Crosby*, it is significant because it reflects the Department of the Interior's position that the 33 foot right-of-way appearing in small tract patents is not exclusive.

An administrative agency's interpretation of its own regulation is normally given effect unless plainly erroneous or inconsistent with the regulation. 1A C. Sands, Sutherland Statutory Construction § 31.06, at 362 (4th ed. 1972).

*See Udall v. Tallman*, 380 U.S. 1, 4, 85 S.Ct. 792, 795, 13 L.Ed.2d 616, 619 (1965); *Burglin v. Morton*, 527 F.2d 486, 490 (9th Cir. 1975), *cert. denied*, 425 U.S. 973, 96 S.Ct. 2171, 48 L.Ed.2d 796 (1976). An administrative agency's interpretation of a statute is not binding upon courts since statutory interpretation is within the judiciary's special competency but where the statute is ambiguous, some weight may be given to administrative decisions interpreting it. *Union Oil Co. of Cal. v. Department of Revenue*, 560 P.2d 21, 23 (Alaska 1977).

**22.** Regulations promulgated pursuant to the Small Tract Act stated:

> Unless otherwise provided in the classification order, the leased land will be subject to a right-of-way of not to exceed 33 feet in width *along the boundaries of the tract* for street and road purposes and for public utilities. (emphasis supplied)

43 C.F.R. § 257.16(c) (1954).

**23.** 2A C. Sands, Sutherland Statutory Construction § 51.05, at 315 (4th ed. 1973) (footnotes omitted).

foot reservation superfluous to the extent of overlap. However, no actual conflict exists between the two provisions. The primary purpose of both reservations is to protect rights-of-way and that purpose is served with regard to the 33 foot provision even if the actual right-of-way is larger than 33 feet. The other purposes of the reservation specifically applicable only to small tracts, street and utility access to interior lots, are not impaired if the Tudor Road right-of-way is 50 feet. However, the converse is not true; the purposes to be served by the larger reservation for local roads cannot be served as readily by a 33 foot right-of-way.[24]

 In light of the foregoing considerations, we conclude that the superior court erred in granting the Greens' motion for summary judgment. Since there are no genuine issues of material fact with respect to the Green property, the state's motion for summary judgment should have been granted.

To the extent that the right-of-way width affecting the Goodmans' lot is dependent upon applicability of Secretarial Order No. 2665, our conclusions with respect to the Greens' property apply. However, the dispute between the state and the Goodmans centers on issues different from those discussed in connection with the Greens' lot. The relevant chronology for lot 12 is the primary reason for such divergence.[25]

The Goodmans contend that their predecessor patentee had received a small tract lease to lot 12 *prior to construction of Tudor Road*; therefore, when lot 12 was leased, the United States had not appropriated any portion of the roadway. The Goodmans further maintain that the original lease of lot 12 created vested rights in the lessee and that neither subsequent construction of Tudor Road nor issuance of Secretarial Order No. 2665 was effective to create a valid 50 foot right-of-way.

The state argues that the Goodmans' predecessor patentee acquired no vested interest in lot 12 until issuance of the patent

---

**24.** Other rules of construction also favor this outcome:

> As a general rule, where the language of a public land grant is subject to reasonable doubt such ambiguities are to be resolved strictly against the grantee and in favor of the government.

3 C. Sands, Sutherland Statutory Construction § 64.07, at 137 (4th ed. 1974) (footnotes omitted). *See generally id.* §§ 63.02, 63.03. Public grants must also be evaluated in light of other rules and aids of statutory construction. *Id.* § 63.10, at 103.

Administrative regulations which are legislative in character are interpreted using the same principles applicable to statutes. 1A C. Sands, Sutherland Statutory Construction § 31.06, at 362 (4th ed. 1972). *See generally Kelly v. Zamarello*, 486 P.2d 906 (Alaska 1971). In the case of administrative regulations which deal with the same subject, their provisions should be considered together:

> Prior statutes relating to the same subject matter are to be compared with the new provision; and if possible by reasonable construction, both are to be so construed that effect is given to every provision in all of them.

2A C. Sands, Sutherland Statutory Construction § 61.02, at 290 (4th ed. 1973) (footnote omitted). In some circumstances, the interpretation of one provision is properly influenced by the content of another provision addressing similar purposes or objects. *State v. Bundrant,*

546 P.2d 530, 545 (Alaska 1976), *appeal dismissed*, 429 U.S. 806, 97 S.Ct. 40, 50 L.Ed.2d 66. *See also Stewart & Grindle, Inc. v. State*, 524 P.2d 1242, 1245 (Alaska 1974). As Professor Sutherland explains:

> The guiding principle . . . is that if it is natural and reasonable . . . that members of the legislature . . . would think about another statute and have their impressions derived from it influence their understanding of the act whose effect is in question, then a court called upon to construe the act in question should also allow its understanding . . . to be influenced by impressions derived from the other statute.

2A C. Sands, Sutherland Statutory Construction § 51.03, at 298–99 (4th ed. 1973).

**25.** The relevant chronology for the Goodman property is as follows:

| | |
|---|---|
| Small Tract Classification No. 22 | March 23, 1950 |
| Alleged "entry" of the Goodmans' predecessor patentee pursuant to small tract lease | April 12, 1950 |
| Secretarial Order No. 2665 | October 20, 1951 (date of publication in Federal Register) |
| Patent issued to the Goodmans' predecessor patentee for lot 12 | April 28, 1952 |

in 1952. Thus, since it is undisputed that construction of Tudor Road had commenced prior to issuance of the patent to lot 12, the appropriation of Tudor Road and the operation of Secretarial Order No. 2665 combined to establish a 50 foot right-of-way. In the alternative, the state contends that summary judgment should not have been granted because a genuine issue of material fact exists with respect to whether construction of Tudor Road was begun prior to the issuance of a small tract lease for lot 12.

Although the parties have focused on the question whether the patentee's rights relate back to the date when the small tract lease was issued, we believe the matter may be resolved by examining the effects of the lease on general right-of-way provisions as implemented by Secretarial Order No. 2665. We already have concluded that the Small Tract Act and Small Tract Classification No. 22 did not segregate all small tracts from the operation of other discretionary right-of-way reservations. Accordingly, prior to issuance of a lease or patent, appropriation of a roadway on lands classified as small tracts and operation of Secretarial Order No. 2665 were sufficient to establish a 50 foot right-of-way. Our disposition of the state's appeal with regard to the Greens' lot illustrates such a situation.

Once a lease to a particular parcel had been issued, circumstances were different.[26] Essentially, the lease separated the land from other small tracts; the lessee took the property subject to both the general right-of-way reservations which applied at the time of lease and the specific right-of-way reservations which applied through the lease's provisions. Thus, the general right-of-way reservation in Secretarial Order No. 2665 applied to the Goodman property only if the effective date of lease was preceded by both the construction of Tudor Road and the issuance of Secretarial Order No. 2665. That is, until the Department of the Interior had acted to bring Tudor Road into existence, there was no basis for the Secretary's reservation of rights-of-way. Once construction of Tudor Road had begun, however, the full administrative authority granted by 48 U.S.C. § 321a (1952) became operative and the lessee of lot 12 took his lease subject to such authority. The Secretary did not exercise that authority until he issued Secretarial Order No. 2665 in October 1951.[27] Thus, prior to October 19, 1951, no general right-of-way reservation for Tudor Road had been established. If the order became effective with respect to Tudor Road before issuance of the lease, we think the property was subject to the 50 foot right-of-way; this conclusion is consistent with our determination that the Small Tract Act and Small Tract Classification No. 22 did not segregate all small tracts from the operation of general, discretionary right-of-way reservations. However, if the general reservation became effective after the lease had been issued, we believe the Secretary must have intended that subsequent general reservations would not apply and that his discretionary reservation in the lease would operate instead of such later reservations. Any other construction either would make the general reservation entirely inapplicable to small tracts, a result which is not supported by legislative or administrative materials before this court, or would make small tract leases and the patents derived from such leases completely vulnerable to subsequent right-of-way acquisition during the term of the lease, a result which is inconsistent with Congress' apparent intention to transfer property interests through the Small Tract Act.[28]

---

26. With respect to leases of other public lands in Alaska, the United States has been treated as having the same rights and obligations as any other lessor. *See Standard Oil Co. of Cal. v. Hickel,* 317 F.Supp. 1192 (D.Alaska 1970) *aff'd.* 450 F.2d 493 (9th Cir. 1970).

27. Secretarial Order No. 2665 was issued on October 16, 1951; it was published in the Federal Register on October 20, 1951.

28. The potential multiplication of rights-of-way under Secretarial Order No. 2665 is illustrated by considering the right-of-way applicable to a "new" local road pursuant to section 3(c) of Secretarial Order No. 2665, which provides:
 (c) The reservation mentioned in paragraph (a) and the rights-of-way or easements mentioned in paragraph (b) [establishing rights-of-way covering lands embraced in feeder roads and local roads] will attach as to

■ In the case at bar, the lease to the Goodman property is dated June 30, 1950[29] and Secretarial Order No. 2665 did not become effective until October 20, 1951. Thus, when the lease was executed, the 50 foot right-of-way had not been established and the second requirement noted above was not met. We therefore conclude that Secretarial Order No. 2665 did not operate to establish a 50 foot right-of-way on lot 12.

The state also contends that the express provisions of the lease to lot 12 reserved power in the federal government to designate rights-of-way after the date of lease. The state points out that the lease contained the following language:

It is further understood and agreed:

(1) That nothing contained in this lease shall restrict the acquisition, granting, or use of permits or rights-of-way under existing laws.

(m) That this lease is taken subject to the rights of others to cross the leased premises on, or as near as practicable to, the exterior boundaries thereof, as a means of ingress or egress to or from other lands leased under authority of this act. Whenever necessary, the Regional Administrator may make final decisions as to the location of rights-of-way. It has been determined that the land leased herein is subject to a 33-foot right-of-way along the north and west boundaries.

The state argues that such language and the placement of the 33 foot right-of-way provision in paragraph (m) show the continuing "paramount power" of the United States "to establish rights-of-way until the patent issued."

■ While we agree that the lease's effects are best evaluated by examining the terms of the lease agreement, we are not persuaded that the lessee of lot 12 obtained only an interest subject to the unlimited power of the federal government to reserve rights-of-way. As we view the Secretary's use of the specific right-of-way reservation in the lease and his use of the separate discretionary reservation in Order No. 2665, the Secretary made no attempt to "acquire, grant or use" a right-of-way other than the one to which the lease and patent both referred. That is, by issuing the small tract lease containing a specific, discretionary right-of-way reservation the Secretary intended to preclude subsequent operation of the general discretionary reservation in Order No. 2665. Even if Secretarial Order No. 2665 is regarded as an attempt by the Secretary to acquire a right-of-way after the date of lease, we note that the order was not in existence until after the date on which a lease to lot 12 was issued. The only relevant "existing law" at the time of the lease was 48 U.S.C. § 321a (1952) and section 321a contained no reference to such reservations. As discussed above, the administrative authority contained in section 321a to reserve rights-of-way was not effective until after both construction of Tudor Road and issuance of Secretarial Order No. 2665.[30]

all new construction involving public roads in Alaska when the survey stakes have been set on the ground and notices have been posted at appropriate points along the route of the new construction specifying the type and width of the roads.

Assuming that the lease provides for a 33 foot right-of-way, construction of a local road not in existence at the time of lease presumably could proceed within the expressly reserved width. Once in existence, the new road might qualify as a "local road" under Secretarial Order No. 2665, §§ 2(a)(3) and 3(c). The applicable right-of-way then would expand to 50 feet. If the Secretary subsequently reclassified the local road to a feeder road or through road, the right-of-way would expand still further. *See*

Secretarial Order No. 2665. We do not believe that the United States intended to grant such an illusory property interest.

29. The Goodmans originally alleged that their predecessor patentee had entered lot 12 pursuant to a small tract lease as early as April 12, 1950. The state countered by arguing that Small Tract Classification Order 22 did not become effective until April 13, 1950. The date which appears on the lease to the Goodman's tract is June 30, 1950.

30. Small Tract Classification No. 22 specifically provided:

Leases will contain an option to purchase the tract at or after the expiration of one year

Although we have concluded that neither the lease agreement nor Secretarial Order No. 2665 operated to establish a right-of-way extending 50 feet from the center line of Tudor Road, one additional matter remains to be considered. The parties apparently agree that actual physical appropriation of the roadway by the United States is sufficient to create a valid right-of-way. Thus, the question remains whether a 50 foot right-of-way actually had been appropriated prior to the date on which lot 12 was leased. In order to answer that question, it is necessary to determine what acts constitute physical appropriation and, if those acts are found to exist, how extensive the appropriation was. However, the materials before this court are not adequate to provide answers to these questions. The parties' briefs and the affidavits submitted with their respective motions for summary judgment do show that a dispute exists regarding the details of Tudor Road's early history.[31] We believe these uncertainties constitute genuine issues of material fact which must be resolved prior to determination of the merits. Accordingly, summary judgment was improper.[32] On remand, the superior court should determine the extent of Tudor Road's appropriation by the United States and the specific acts which constituted the appropriation. At a minimum, the superior court should make the following findings: the date Tudor Road was planned and the planned width, the date Tudor Road was staked and the designated width, and the date construction of Tudor Road began.[33]

---

from the date the lease is issued, provided the terms and conditions of the lease have been met.

The lease reflects this requirement by its inclusion of the following language:

The lessee or his duly approved successor in interest may purchase the above described land at or after the expiration of one year from the date of this lease, provided the improvements required hereunder have been made and he has otherwise complied with the terms and conditions of this lease.

The option to purchase imposes no conditions which were not already applicable through the lease. We have concluded that the lease did not permit acquisition during the lease term of general rights-of-way which were not applicable to the leased land prior to the effective date of the lease; accordingly, we believe the interest transferred by the lease and option to purchase was not intended to be subject to unilateral reduction between the date the lease was executed and the date the option was exercised. Any other interpretation not only would violate the apparent intention of the parties as expressed in the option provision, but would contravene the principles governing leases with options to purchase. *See generally* I American Law of Property §§ 3.82, 3.84 (1952); II M. Friedman, Friedman on Leases § 15.1 (1974); 2 R. Powell, The Law of Real Property ¶ 245[2] (Rohan ed. 1977).

**31.** The state introduced an affidavit and other documents indicating that construction of Tudor Road was begun as early as April 1950. An affidavit introduced by the Goodmans states that actual construction of Tudor Road began in late May or early June 1950. Thus, although the parties apparently agree that construction had begun prior to the issuance of a lease to the Goodman's parcel, the extent of that activity and other facts relevant to the question of appropriation remain to be determined.

**32.** Civil Rule 56(c) provides, in part:

Judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

Once the movant has satisfied his burden of establishing an absence of genuine issues of material fact and its right, on the basis of the undisputed facts, to judgment as a matter of law, the non-movant is required, in order to prevent summary judgment, to set forth specific facts showing that he could produce evidence reasonably tending to dispute or contradict the movant's evidence and thus demonstrate that a material issue of facts exists. *Howarth v. First Nat'l Bank of Anchorage,* 540 P.2d 486, 489–90 (Alaska 1975), *aff'd on rehearing,* 551 P.2d 934 (Alaska 1976). Mere assertions of fact in pleadings and memoranda are insufficient for denial of a motion for summary judgment. *Brock v. Rogers & Babler, Inc.,* 536 P.2d 778, 782–83 (Alaska 1975); *Braund, Inc. v. White,* 486 P.2d 50, 53–54 (Alaska 1971).

**33.** We do not imply that such factors are the only relevant considerations for evaluating physical appropriation. Since the parties' briefs do not specifically address the question and the factual setting is murky, we decline to suggest criteria in the present appeal. However, with guidance from the parties and the above noted facts as a starting point, the superior court should be able to make a reasoned

As discussed previously, the superior court's grant of the Greens' motion for summary judgment also must be reversed, and the case is remanded for entry of summary judgment in favor of the state.

Reversed and remanded in part.

decision as to the date and extent of appropriation.

Our disposition of this matter does not preclude the superior court from considering administrative materials which are not before us on this appeal.