**823 SQUARE FEET, MORE OR LESS: A. Lee Goodman and Joan Goodman, Appellants,**

v.

**STATE of Alaska, Appellee.**

**No. 5746.**

Supreme Court of Alaska.

March 4, 1983.

Michael Price and David A. Devine, Groh, Eggers, Robinson, Price & Johnson, Anchorage, for appellants.

Eugene F. Wiles, Stephen M. Ellis and Marc D. Bond, Delaney, Wiles, Hayes, Reitman & Brubaker, Anchorage, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

PER CURIAM.

On remand from our decision in *State, Department of Highways v. Green*, 586 P.2d 595 (Alaska 1978) the trial court found, on cross-motions for summary judgment, that a 100 foot right-of-way for Tudor Road consisting of 50 feet on each side of the section line was planned, surveyed, and staked, and that the land was stripped and cleared prior to the date on which the lot in question was leased. Although the roadway itself was only 24 feet wide with drainage ditches extending another 12 feet on each side of the roadway, the court found that surveying, staking, stripping, and clearing the entire 100 feet were sufficient acts of appropriation to create a 50 foot right-of-way on the lot. We agree. The physical acts here would indicate unmistakably that the property on which they took place had been taken for road right-of-way purposes. *See* 44 Pub.Lands Dec. 513, 515 (1916); 43 C.F.R. § 2800.0–1(b) (1979), *revised* 45 Fed.Reg. 44,526 (1980).

The judgment is AFFIRMED.

CONNOR, J., not participating.

BURKE, Chief Justice, concurring in the result.

I am not satisfied that public land can be appropriated, for purposes of a roadway easement, by physical appropriation alone,

as suggested by the court's holding in this case. For the following reasons, however, I concur in the result.

In our prior opinion, *State of Alaska, Department of Highways v. Green*, 586 P.2d 595 (Alaska 1978), we stated: "Our disposition of this matter does not preclude the superior court from considering administrative materials which are not before us on this appeal." 586 P.2d at 607 n. 33. The state subsequently presented to the trial court Public Land Order 601, as authority for its position that it was entitled to a 50 foot right-of-way over the Goodmans' property.

PLO 601, issued August 10, 1949, provides in part:

Subject to valid existing rights and to existing surveys and withdrawals for other than highway purposes, the public lands in Alaska lying . . . within 50 feet on each side of the center line on all local roads . . . are hereby withdrawn from all form of appropriation under the public land laws, including the mining and mineral leasing laws, and reserved for highway purposes . . . .

However, a 33 foot right-of-way was also reserved by the Small Tract Act Classification Order No. 22 of March 23, 1950, which provides in part:

The leases will be made subject to rights-of-way for road purposes and public utilities, of 33 feet in width. . . .

This language was also a part of the lease taken by the Goodmans' predecessor on June 30, 1950.

In determining the effect of Classification Order 22 upon PLO 601, one need look no further than our earlier opinion. There,

in analyzing the apparent conflict between Secretarial Order 2665, which provided a 50 foot right-of-way along all local roads in Alaska, and Classification Order 22, which established a 33 foot right-of-way along leases for road purposes and public utilities, we determined that both rights-of-way were to be given effect.[1] 586 P.2d at 602–03. We found that no actual conflict existed between the two provisions, and stated:

The primary purpose of both reservations is to protect rights-of-way and that purpose is served with regard to the 33 foot provision even if the actual right-of-way is larger than 33 feet. The other purposes of the reservation specifically applicable only to small tracts, street and utility access to interior lots, are not impaired if the Tudor Road right-of-way is 50 feet. However, the converse is not true; the purposes to be served by the larger reservation for local roads cannot be served as readily by a 33 foot right-of-way.

*Id.* at 603 (footnote omitted).

Like Secretarial Order 2665, PLO 601 applied to all local roads in Alaska. Thus, the reasoning in *Green* is applicable to the case at bar, and I conclude that Classification Order 22 did not modify PLO 601.

The next question is whether PLO 601 applied to subsequently built local roads such as Tudor.[2] PLO 601 defines local roads as "[a]ll roads not classified above as Through Roads or Feeder Roads, established or maintained under the jurisdiction of the Secretary of the Interior." I believe that under a natural as well as practical construction of the order, PLO 601 applied to subsequently built local roads.

1. In *Green* we focused on the apparent conflict between Secretarial Order 2665 and an administrative regulation, 43 C.F.R. § 257.16(c) (1954), promulgated pursuant to the Small Tract Act. 586 P.2d at 602. However, the pertinent language of Classification Order 22 was identical to the language in the regulation; both stated that leases would be subject to a 33 foot right-of-way for road purposes and public utilities. *Id.; see also* Small Tract Classification No. 22 (March 23, 1950). Thus, the discussion in *Green* with regard to the administrative

regulation also applies to Classification Order 22.

2. Just as we treated Tudor as a local road under Secretarial Order 2665 in *Green,* I would treat Tudor as a local road under PLO 601. *See Green,* 586 P.2d at 604 ("Thus, the general right-of-way reservation in Secretarial Order No. 2665 applied to the Goodman property only if the effective date of lease was preceded by both the construction of Tudor Road and the issuance of Secretarial Order No. 2665.")

Finally, it must be determined whether Tudor Road was in existence before the effective date of the lease of the Goodman property. In *Green* we stated as follows:

> Thus, the general right-of-way reservation in Secretarial Order No. 2665 applied to the Goodman property only if the effective date of lease was preceded by both the construction of Tudor Road and the issuance of Secretarial Order No. 2665. That is, until the Department of the Interior had acted to bring Tudor Road into existence, *there was no basis* for the Secretary's reservation of rights-of-way. *Once construction of Tudor Road had begun,* however, the full administrative authority ... became operative and the lessee ... took his lease subject to such authority.

*Green,* 586 P.2d at 604 (emphasis added). Since Secretarial Order No. 2665 was not issued until after June 30, 1950, which was the effective date of the lease, it was unnecessary for us to determine when Tudor Road was constructed. *Id.* at 605. However, since PLO 601 was issued on August 10, 1949, well before the effective date of the lease, this question becomes important in the present appeal.

The record now before us clearly establishes that Tudor Road was in existence before the effective date of the lease of the Goodman property. The road was completed by May, 1950.[3] Thus, PLO 601 operated

to establish a 50 foot reservation on the Goodman property. Summary judgment for the state was appropriate, and the Goodmans are not entitled to compensation.

---

3. The court's findings of fact, on remand, include the following:

    8. The surveying and staking for Tudor Road commenced at the corner of Lake Otis and Tudor on April 26, 1950, and proceded easterly....

    9. The survey crew, ... surveyed and staked a 100-foot right-of-way, 50 feet on each side of the centerline of Tudor Road ....

    10. The ... construction crew which constructed Tudor Road was never more than one day behind the surveyors in their clearing of the right-of-way....

    11. The ... construction crew stripped and cleared 100 feet, 50 feet on each side of the centerline, along Tudor Road....

    12. The surveying and staking of Tudor Road was completed on May 3, 1950....

    13. The first mile of Tudor Road, which included the portions abutting all of the defendants' lands which are the subject matter of this action, was surveyed and cleared no later than May 1, 1950....

    14. The entire length of Tudor Road was completed by the middle of May, 1950....

    15. The roadway itself was 24 feet wide, with an additional 12 feet graded for ditches on either side of the roadway. The amount of the 100-foot clearing actually used for the roadway itself varied depending on the terrain, but the entire roadway was cleared 50 feet from the centerline as surveyed....

    16. The planning, pre-survey, survey, staking, clearing, and construction of Tudor Road was completed prior to the issuance of a lease by the Bureau of Land Management to any of the defendants' predecessors in interest.

These findings are supported by the record.