Eddie Jo ANDERSON, Appellant,

v.

Vernon R. ANDERSON, Appellee.

No. S–1320.

Supreme Court of Alaska.

April 24, 1987.

Charles A. Winegarden, Kodiak, for appellant.

C. Walter Ebell, Jamin, Ebell, Bolger & Gentry, Kodiak, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

MATTHEWS, Justice.

Eddie Jo Anderson appeals from the superior court's denial of her motion to order execution on a limited entry permit held by her former husband, Vernon Anderson, to satisfy a judgment against him for past due child support. The sole issue presented is whether the Alaska Exemptions Act (AS 09.38.065) (permitting creditors to levy against exempt property of any kind for child support) allows Mrs. Anderson to execute on Mr. Anderson's limited entry permit to satisfy a judgment against him for past due child support, notwithstanding a provision of the Alaska Limited Entry Act (AS 16.43.150) (entry permits may not be attached on execution of judgment or under any other process or order of any court).

We hold that the legislature intended to provide certain specific and limited exceptions whereby child support claims may be made against otherwise exempt limited entry permits. We therefore reverse the superior court's denial of Mrs. Anderson's motion to execute against Mr. Anderson's limited entry permit, and remand for the court to grant her motion.

I. FACTS AND PROCEEDINGS

Vernon Anderson is the father of three children. Eddie Jo Anderson adopted the children during her marriage to Vernon. The Andersons were divorced and as part of the decree, Mrs. Anderson was awarded custody of the children. Mr. Anderson was required to pay a total of $500 per month in child support.

Mr. Anderson failed to pay a significant portion of the child support payments. The parties entered into a stipulation and judgment in the Superior Court of the State of Washington, that Mr. Anderson was in arrears in payment of past due child support in the amount of $54,404.73. Of this amount, $31,900 was due to the State of Washington for welfare assistance benefits it paid to Mrs. Anderson and the children. The remaining $22,504.73 was due directly to Mrs. Anderson, which the court awarded to her.

The foreign judgment was recorded in the Alaska Superior Court, Third Judicial District at Kodiak. Mrs. Anderson filed a motion to order execution on Mr. Anderson's Alaska Limited Entry Permit No. S01K 60983Q. The motion was denied,

as was Mrs. Anderson's motion to reconsider. She timely appeals.

## II.  DISCUSSION

### A.  Standard of Review

The issue in this appeal is purely a matter of statutory interpretation; therefore, our review of the trial court's interpretation is *de novo*. *See Jackson v. White*, 556 P.2d 530, 533 n. 8 (Alaska 1976).

### B.  Statutory Analysis and Construction

The Alaska Exemptions Act, AS 09.38, provides in part that "[a]n individual is entitled to exemption of ... (8) limited entry permits granted under AS 16.43, except as provided in that chapter." AS 09.38.-015(a)(8). The Exemptions Act further provides, however, that "[n]otwithstanding other provisions of this chapter, (1) a creditor may make a levy against exempt property of any kind to enforce a claim for (A) child support." AS 09.38.065(a)(1)(A). Thus, it is apparent that under the plain meaning of the Exemptions Act, Mrs. Anderson is entitled to an order of execution against Mr. Anderson's limited entry permit for past due child support.

The seemingly unambiguous provision of the Exemptions Act is affected by another act, however. The Alaska Limited Entry Act provides that "[e]xcept as provided in [sections not directly relevant in this case], an entry permit may not be: ... (3) attached, distrained, or sold on execution of judgment or under any other process or order of any court." AS 16.43.150(g)(3).[1] It is apparent that under the plain meaning of the Limited Entry Act, Mrs. Anderson is not entitled to a court order of execution against Mr. Anderson's limited entry permit. Thus, there is an ambiguity arising from the co-application of the conflicting provisions of the Exemptions Act and the Limited Entry Act.

These are not the only statutes dealing with exempt property and the enforcement of child support obligations. Alaska Statute 47.23.250, which authorizes the Child Support Enforcement Agency to issue orders to withhold and deliver property of a parent who fails in his/her child support obligations, provides in part that "[e]xemptions under AS 09.38 [Exemptions Act] do not apply to proceedings to enforce the payment of child support under AS 47.23.-230—47.23.270." AS 47.23.250(i).

We must construe these statutes, looking first to the legislative intent underlying the competing statutory schemes. *Hafling v. Inlandboatmen's Union of the Pacific*, 585 P.2d 870, 872-73 (Alaska 1978).

### C.  Legislative History and Intent

#### 1.  Limited Entry Act

In 1973, the Alaska legislature enacted the Limited Entry Act. Ch. 79, § 1, SLA 1973, codified at AS 16.43. The purpose of this act was "to promote the conservation and the sustained yield management of Alaska's fishery resource and the economic health and stability of commercial fishing in Alaska by regulating and controlling entry into the commercial fisheries...." AS 16.43.010; *see also Commercial Fisheries Entry Commission v. Apokedak*, 606 P.2d 1255, 1258-61, 1264-65 (Alaska 1980).

Indications of legislative intent relevant to the prohibition of execution against limited entry permits do not specifically address execution for past due child support. Rather, the legislature appeared to be con-

---

1. Subsection (g) of AS 16.43.150 *Terms and conditions of entry permit; annual renewal*, provides in full:

    Except as provided in AS 16.10.333—16.10.337 and in 44.81.230—44.81.250, an entry permit may not be:
    (1) pledged, mortgaged, leased, or encumbered in any way;
    (2) transferred with any retained right of repossession or foreclosure; or
    (3) attached, distrained, or sold on execution of judgment or under any other process or order of any court.

AS 16.10.333—16.10.337 provide that a limited entry permit may be pledged as security for loans by the state to individual commercial fishers for the purchase of limited entry permits, and for default and foreclosure on such loans. AS 44.81.210 and 44.81.230—44.81.250 similarly provide for bank loans by the Commercial Fishing and Agriculture Bank for the purchase of limited entry permits, wherein the permit may be pledged as security for the loan, and in the event of default on the loan, the bank may foreclose on the permit.

cerned that limited entry permits might be pledged as security and subsequently taken pursuant to court judgment. A report issued by the House Resources Committee explained:

> During deliberations on HB 126 the possible problems resulting from the transfer and sale of entry permits were considered at some length. *Concern was expressed that the free transferability of entry permits might result in a pattern of economic coercion against fishermen holding permits.* Fear was expressed that the general lack of adequate financing for fishermen ... might make it possible for those providing financing to indirectly control entry permits to some degree.
>
> Certain safeguards against the abuse of the transfer provisions were contained in HB 126 and have been retained in the committee substitute. ... *Entry permits cannot be pledged as security for loans or taken pursuant to judgement* [sic].

1973 House Journal 503, 504 (emphasis added).

As part of the complicated statutory scheme designed to regulate and control the issuance of entry permits, the legislature later amended the act in 1977 to provide that, with certain exceptions not relevant in this case, "an entry permit may not be (1) pledged, mortgaged, leased, or encumbered in any way; (2) transferred with any retained right of repossession or foreclosure; or (3) attached, distrained, or *sold on execution of judgment or under any other process or order of any court.*" Ch. 73, § 1, SLA 1977, codified at AS 16.43.-150(g) (emphasis added).

With this background in mind, we now turn to the parties' arguments. Both parties rely on *Brown v. Baker,* 688 P.2d 943 (Alaska 1984), the only case construing AS 16.43.150(g). Mr. Anderson cites *Brown* for the proposition that subsection (g)(3) was "designed to insulate fishermen from 'economic coercion' and 'to prevent the forced loss of livelihood that would result from the court-ordered sale of permits.' " *Brown,* 688 P.2d at 948. In *Brown,* how-

ever, this court was construing subsections (g)(1) and (g)(2) in the context of a limited entry permit purchaser's pledge of the permit as security for the purchase. The application of subsection (g)(3) was neither in issue nor discussed.

In holding the purchaser's pledge and the seller's retained interest in the permit invalid, we found that "the security agreement contravenes and defeats the purpose of the statute." *Id.,* citing 1973 House Journal 504. It is not surprising that the court would cite the 1973 House Journal in gleaning the legislative purpose of the statute, for *Brown* involved the very kind of evil that the legislature wanted to prevent. For this reason, "and because we [saw] no special public interest in enforcing the illegal agreement," 688 P.2d at 948, we held that the agreement was unenforceable. *Brown* is thus of limited application to this case. Nonetheless, it is clear that subsection (g)(3) is effective beyond the core concern of financiers' control of the right to fish as a permit holder, and that subsection cannot be ignored merely because it goes further than the core concern.

### 2. The Exemptions Act

In 1982, the Alaska legislature enacted the Alaska Exemptions Act. Ch. 62, § 2, SLA 1982, codified at AS 09.38. The Exemptions Act provides in part that "[a]n individual is entitled to exemption of ... limited entry permits granted under AS 16.43, except as provided in that chapter." AS 09.38.015(a)(8). The legislature further provided, however, that certain claims were enforceable against exempt property. Thus, "[n]otwithstanding other provisions of this chapter [AS 09.38], *a creditor may make a levy against exempt property of any kind to enforce a claim for child support.*" AS 09.38.065(a)(1)(A) (emphasis added).

The legislature made the following statement of intent in enacting the Exemptions Act:

> It is the intent of the legislature to modernize the procedures for execution on a judgment and to afford to a judgment debtor adequate protection of his personal property and income necessary to pro-

vide for his own needs and the needs of his dependents while remaining independent of further public assistance.

Ch. 62, § 1, SLA 1982. From the language of the Act and the legislature's expression of its intent, we find that the legislature expressly considered the competing interests of protecting limited entry permits and enforcing child support awards, and has given child support a higher priority.

The legislature adopted the National Conference of Commissioners on Uniform State Laws' Uniform Exemption Act, as modified by the Alaska Code Revision Commission. *See* Code Revision Commission Chairman's January 9, 1981 transmittal letter accompanying HB 74 "An Act relating to the right of creditors and debtors," to the Twelfth Legislature, First Session, Alaska Legislative Council, *reprinted in* 1981 House Journal 151–52. The Uniform Exemptions Act does not contain an exemption for limited entry permits. *See* 13 Uniform Law Annotated, Uniform Exemptions Act § 5 (1980). Moreover, the provisions governing exemptions prior to the enactment of the 1982 Act contained no exemption for limited entry permits. AS 09.35.-080 (repealed 1982). Thus, the inclusion of a limited entry permit exemption was a deliberate act of the legislature which took place later in time than the adoption of the

"no execution" language of AS 16.43.-150(g)(3).

The Uniform Act also differs from the Alaska Act with respect to the types of claims enforceable against exempt property. The Uniform Act provides in part that "[n]otwithstanding other provisions of this Act: (1) a creditor may make a levy against exempt property of any kind to enforce a claim for: (i) *alimony, support, or maintenance.*" Uniform Exemptions Act § 10(a)(1)(i) (emphasis added). The Alaska Act differs by providing that "a creditor may make a levy against exempt property of any kind to enforce a claim for *child support.*" AS 09.38.065(a)(1)(A) (emphasis added). Again, it is clear that the legislature made a deliberate determination to provide an exception for child support claims enforceable against otherwise exempt property, for it did not simply adopt wholesale the broader exceptions under the Uniform Act.

From this, we conclude that the legislature intended to provide certain specific and limited exceptions where claims may be made against otherwise "exempt property of any kind." It is not surprising that one such limited exception is for actions to collect for past due child support obligations, for the legislature has consistently expressed its concern with and support for the compelling public policy favoring enforcement of child support obligations.[2]

---

2. The legislature has made its strongest statement of public policy favoring the enforcement of child support obligations in the Child Support Agency Act and the Act relating to child support enforcement of July 4, 1984. In 1977, the Alaska legislature enacted the Child Support Enforcement Act, AS 47.23, creating the Child Support Enforcement Agency. Ch. 126, § 1, SLA 1977. The legislature stated its purpose as follows:

> The state ... declares that the common law and Alaska statutes pertaining to the establishment and enforcement of child support obligations shall be augmented by additional remedies in order to meet the needs of minor children. It is declared to be the public policy of this state that this Act be construed and administered to the end that children shall be maintained from the resources of responsible parents, thereby relieving, at least in part, the burden presently born by the general citizenry through welfare and welfare-related programs.

*Id.*

One of the additional remedies which the legislature provided was to authorize the Child Support Enforcement Agency to issue an order to withhold and deliver property. In this context, the legislature provided that "[e]xemptions under AS 09.38 do not apply to proceedings to enforce the payment of child support under AS 47.23.230—47.23.270." AS 47.23.250(i) (amended 1984).

Notwithstanding the 1977 Act, the legislature recently found that the problem of "the failure of parents to support their children is vast and far reaching. The harmful effects of unpaid child support touch not only the poor but reach far beyond, diminishing the overall quality of life for all Alaskans." Ch. 144, § 1, SLA 1984 (An Act relating to child support enforcement, July 4, 1984). Therefore, the legislature amended the Child Support Enforcement Act "to enhance the efforts of those persons who seek to enforce the payment of child support obligations by noncustodial parents having the duty of support." *Id.* Relevant to this case is the

Mr. Anderson argues that the specific statute, the Limited Entry Act, controls the general statute, the Exemptions Act, because where two statutes conflict, the specific statute should prevail regardless of whether it was passed prior to the general statute, "unless it appears that the legislature intended to make the general act controlling." *State, Department of Highways v. Green*, 586 P.2d 595, 602 (Alaska 1978), *aff'd sub. nom., 823 Square Feet v. State*, 660 P.2d 443 (Alaska 1983). As we conclude from our analysis of the legislature's intent in enacting the relevant statutes, we believe the legislature intended the general Exemptions Act to prevail in this type of case.

## III. CONCLUSION

The expressions of legislative intent in combination with the clear provisions of the 1982 Exemptions Act persuade us that the legislature meant what it said in permitting a parent with past due child support claims to execute against an otherwise exempt limited entry permit. Therefore, we REVERSE the superior court's denial of Mrs. Anderson's motion to execute on Mr. Anderson's limited entry permit for past due child support, and REMAND with instructions to grant her motion.

REVERSED and REMANDED.

legislature's statement of findings and purpose. The legislature found that

a disproportionately high percentage of lower-income, single-parent families are headed by women. The difficulties in obtaining child support from noncustodial parents contributes significantly to the hardship of those families....

The legislature also finds that the hardship experienced by children in families who may rely on support from a noncustodial parent should not be a necessary condition that must be endured by those families. Statutory tools have been provided to enable the child support enforcement agency to collect unpaid child support owed by a parent....

Ch. 144, § 1, SLA 1984. One of the statutory tools provided in the 1977 Act was the provision that exemptions under the Exemptions Act do not apply to proceedings to enforce the payment of child support. AS 47.23.250(i).