*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CRYSTAL RUERUP, | ) | |
| | ) | Supreme Court No. S-16278 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-15-01659 CI |
| v. | ) | |
| | ) | O P I N I O N |
| CHARLES F. RUERUP III, | ) | |
| | ) | No. 7216 – January 12, 2018 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Paul R. Lyle, Judge.

Appearances: Teryn Bird, IACNVL Legal Services Program, Fairbanks, for Appellant. Notice of nonparticipation filed by Charles F. Ruerup, III, pro se, Fairbanks, Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, and Bolger, Justices. [Carney, Justice, not participating.]

MAASSEN, Justice.

## I.    INTRODUCTION

A mother appeals the superior court's decision to modify a long-term domestic violence protective order against her now ex-husband. The protective order was issued by a magistrate judge, based on his findings that the father had committed acts of domestic violence. But the superior court, during the parties' subsequent and separate divorce and custody case, concluded that findings of domestic violence were not

supported by the evidence. When modifying the protective order to accommodate a change in the parties' living arrangements, the superior court also modified the order's factual findings about domestic violence, noting its own conclusion that such findings were not justified.

The mother argues that the superior court erred by modifying the factual findings of domestic violence underlying an unappealed final order. We agree that the court lacked the authority to modify the factual findings on which the order was based. We therefore vacate that aspect of the protective order.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Crystal and Charles Ruerup met in Alaska in 2005, had their first child, G., in 2006, and separated in 2008.[1] They agreed on sharing G.'s custody in January 2009 but soon reconciled and never followed their agreement. By early 2010 they had moved to Kentucky, where in 2012 they married without legal formalities. In February 2013 they had their second child. They then returned to Alaska, and in April 2014 they officially married. In December they again separated when Crystal moved to a domestic violence shelter with the children. Charles filed for divorce in April 2015.

### B.    Proceedings

#### 1.    2008 custody and protective order

When the parties first separated in 2008, they sought the court's assistance in setting up a custody arrangement for G. They reached settlement at mediation before there was any substantive litigation, and in early 2009 the court approved their parenting agreement. Around this time Crystal also raised allegations of domestic violence; a

---

[1]    We identify the child by an initial for reasons of privacy.

magistrate judge heard evidence on the allegations in July 2008 and denied a long-term protective order.

### 2.  2015 protective order

Crystal sought another protective order in January 2015, soon after the parties separated for good; her complaint was given a new case number.  Crystal alleged that there had been numerous incidents of domestic violence between 2007 and 2015. A different magistrate judge held a hearing in March 2015 and considered only the post-2008 allegations.  A number of witnesses testified, including Crystal and Charles, a friend of Crystal's, Crystal's sister-in-law, and Charles's mother, brother, and nephew. The magistrate judge found by a preponderance of the evidence that Charles had committed three acts of domestic violence against Crystal, two in 2009 and one in 2011. Based on these findings, the magistrate judge issued a long-term protective order. Among other things, the order limited the parties to certain modes of communication and barred Charles from coming within 500 feet of Crystal's home.  The order did not purport to decide any custody issues.  Neither party appealed it.

### 3.  2015 divorce and custody modification

Charles's complaint for divorce, filed in April 2015, was consolidated with the 2008 case involving the custody of G.  On motions for interim custody, Crystal sought to use against Charles the statutory presumption disfavoring a parent with a history of committing acts of domestic violence, relying on the findings underlying the March 2015 protective order as well as other allegations.[2]  The superior court determined

---

[2]  *See* AS 25.24.150(g) ("There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child.").

that it was not bound by the magistrate's findings on domestic violence and should independently hear and consider the evidence before reaching a decision on custody.

The court accordingly heard testimony from Charles, Crystal, a friend of Crystal's, and Charles's mother. The court found — contrary to the magistrate judge's findings underlying the March 2015 protective order — that the evidence did not support findings of domestic violence. It expressly rejected all of Crystal's allegations, noting its concerns with delays in her reporting, the timing of her allegations in relation to the parties' disputes over custody, and her overall credibility. The court ordered that the parties continue to share custody of G. on a week on, week off schedule.

The court nonetheless reissued the March 2015 protective order, but in amended form. First, the court uncontroversially narrowed the 500-foot restriction on Charles's proximity to Crystal's home in order to allow Charles to take G. to school. Second, although the court checked the box on the form order stating that it found crimes of domestic violence, specifically "assault or reckless endangerment," the court added the following note under "Other findings":

> The Court finds that no incident of Domestic Violence has been established through 7/24/2015. However, the Court leaves this Domestic Violence Restraining Order in place because the Master made a finding and the court finds it in the best interest of both parties and their children that the DVRO remain in place for the time being.

Crystal objected to this amendment and asked that the order be reissued in its original form except for the amendment to the 500-foot proximity restriction; the superior court denied this request.

In March 2016, following a partially contested trial, the court granted the parties' divorce and decided issues of custody and property. For purposes of the custody determination, Crystal accepted the court's finding that there was no domestic violence; this allowed the parties to continue their interim arrangement of shared physical custody.

As for legal custody, the court determined that the evidence supported a finding that Crystal was better positioned to meet the children's educational and emotional needs and awarded final decision-making authority to her.

The court's post-trial decision also gave a fuller explanation of its rationale for modifying the domestic violence findings in the long-term protective order. The court rejected, as unsupported by any evidence, Crystal's argument that the police would refuse to enforce a protective order that disclaimed any findings of domestic violence. The court concluded that the parties' request to modify the order's proximity restriction gave it jurisdiction to modify other aspects of the order. The court noted that Crystal had accepted its findings on domestic violence for purposes of the award of shared custody, and if the protective order were not amended there would be inconsistent orders on the same issue. The court also concluded that the magistrate judge's factual findings were not binding, because res judicata does not apply to custody modifications and there were compelling reasons not to apply collateral estoppel based on the differences in the nature and stakes of domestic violence and custody proceedings.

Crystal appeals the superior court's modification of the factual findings in the long-term protective order. Charles did not participate on appeal.

## III.   STANDARD OF REVIEW

The extent of a superior court's statutory authority presents a question of law that we review de novo.[3] We review a court's interpretation of statutes de novo[4] and

---

[3]   *Dodge v. Sturdevant*, 335 P.3d 510, 511 (Alaska 2014).

[4]   *Anderson v. Anderson*, 736 P.2d 320, 321 (Alaska 1987).

"apply our independent judgment, adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[5]

## IV.  DISCUSSION

### The Superior Court Lacked Authority To Modify The Factual Findings On Which The Long-Term Protective Order Was Based.

Crystal's challenge in this appeal is limited to the superior court's modification of the protective order to note its own contrary finding that "no incident of Domestic Violence has been established through 7/24/2015."[6] Crystal explicitly declined to challenge the superior court's authority to rely on its own independent findings on domestic violence in the separate context of the divorce and custody case, where they were relevant to whether the statutory presumption should apply against Charles.[7] Crystal agreed to share custody with Charles, an outcome that could be precluded if the superior court followed the magistrate's lead in finding a history of domestic violence. Recognizing the inconsistency in Crystal's position, we nonetheless agree with her that it was error to modify the factual findings that provided the basis for the protective order.

---

[5]     *Stephanie F. v. George C.*, 270 P.3d 737, 746 (Alaska 2012).

[6]     The court's added language could be read not as a modification but rather as an explanation of why the court was signing a protective order that appeared to contradict its own findings in the custody case.  But when it placed its oral decision of the custody issues on the record in March 2016, the court explained that its intent was to modify and not "reinstate" the protective order's domestic violence findings.  We therefore review it as a substantive modification rather than an explanatory comment.

[7]     Crystal writes in her brief that she "does not challenge th[e] trial court's jurisdiction and ability to independently decide whether she established by a preponderance of the evidence that Charles committed two or more crimes of domestic violence against her for custody purposes."  *See Morris v. Horn*, 219 P.3d 198, 208 (Alaska 2009) (holding that previous domestic violence finding did not have res judicata effect in proceeding to modify visitation because "domestic violence and visitation modification proceedings are different causes of action.").

The March 2015 protective order was a final, appealable order.[8] Neither party appealed it,[9] and the domestic violence proceeding was not consolidated with the later-filed divorce.[10] Neither party sought relief from the order under Alaska Civil Rule 60(b).[11]

This is not to say that the order could not be modified. Alaska Statute 18.66.120(a) allows the court to modify a protective order upon either party's request.[12] Crystal argues that "neither party moved the court for modification" and that she did not agree to it. But the superior court concluded that the parties sought to modify the protective order to allow Charles to take G. to school notwithstanding the school's proximity to Crystal's new apartment, and this conclusion has support in the record. Addressing this issue at the interim motions hearing, Crystal said, "I believe [the school] probably is over 500 feet [from the apartment;] if not I'm willing to make an exception

---

**8** *See* AS 22.15.100(9)(A) (giving magistrates power "to issue a protective order in cases involving" domestic violence); 28 C.J.S. *Domestic Abuse and Violence* § 34 ("Although an appeal from the initial ex parte domestic violence order generally is interlocutory, a domestic violence restraining order is an appealable final judgment." (citations omitted)).

**9** *See* AS 22.15.240(a) ("Either party may appeal a judgment of the district court in a civil action to the superior court.").

**10** Crystal did move to consolidate the 2008 custody case involving G. with the divorce case; this motion was granted in April 2015.

**11** Rule 60(b) allows a court to revisit a prior judgment under certain circumstances, including when "it is no longer equitable that the judgment should have prospective application" among others. Alaska R. Civ. P. 60(b)(5). *See also Jackson v. Sey*, 315 P.3d 674, 678 (Alaska 2013) (discussing appeal and Rule 60(b) challenge as alternate ways to attack a "final and appealable order").

**12** AS 18.66.120(a) ("Either the petitioner or the respondent may request modification of a protective order.").

so that [Charles] can pick up and drop off [G.] from school." The court responded that "the protective order will be modified" to allow that accommodation. Based on this exchange, the court could reasonably conclude that the parties had requested modification.

The legislative history of AS 18.66.120, though sparse, supports an intent to make modifications and dissolutions of protective orders relatively easy to obtain. The Chair of the Senate Judiciary Committee raised a concern about criminal prosecutions based on violations of protective orders after the victim of domestic violence and the subject of a protective order have reconciled.[13] The parties here did not reconcile, but they both wanted Charles to have access to G.'s new school without running afoul of the protective order's 500-foot proximity limitation. For the same reason that the parties should be able to dissolve a protective order following reconciliation, they should have a straightforward process for modifying an order to reflect their changed circumstances. But requests to modify the provisions regarding the order's implementation (changing addresses or expanding or contracting the proximity restrictions, for example) should not carry with them the risk that the underlying factual findings of domestic violence — the entire justification for the order — will be again placed at issue.

By statute, the court may issue a long-term protective order only if it "finds by a preponderance of evidence that the respondent has committed a crime involving domestic violence against the petitioner."[14] An order without such a finding is invalid. In its amended long-term order in this case, the superior court checked the box indicating

---

[13] Minutes, Sen. Judiciary Comm. Hearing on H.B. 314, 19th Leg., 2d Sess. (Apr. 15, 1996) (comments of Senator Robin Taylor, Chair).

[14] AS 18.66.100(b).

that it had found "by a preponderance of the evidence that respondent committed, or attempted to commit," the domestic violence crime of "assault or reckless endangerment," but it then negated this finding by stating more explicitly its finding "that no incident of Domestic Violence has been established through 7/24/2015," the date of the amended order. The disclaimer of any finding of domestic violence eliminated the factual basis for the order.

We recognize that AS 18.66.120(a) sets no explicit limits on the court's authority to modify protective orders; it states only that either party "may request modification of a protective order." But we read modification and dissolution as means to accommodate the parties' evolving circumstances, not an invitation "to relitigate 'in the hope of gaining a more favorable position.' "[15] This conclusion is reinforced by AS 18.66.100, which sets out the provisions a long-term protective order may contain. One provision — "prohibit[ing] the respondent from threatening to commit or committing domestic violence, stalking, or harassment" — is "effective *until further order of the court*."[16] The remaining provisions — covering such things as limitations on contact, proximity restrictions, surrender of firearms, temporary custody, drug use, and rehabilitation programs — "are effective for one year *unless earlier dissolved by court order*."[17] All these provisions — relevant to the protective order's implementation — are thus specifically made subject to modification by later court order. But modification of these implementation provisions will not undercut the order's factual

---

[15]   *See McAlpine v. Pacarro*, 262 P.3d 622, 626 (Alaska 2011) (quoting *Bunn v. House*, 934 P.2d 753, 757 n.12 (Alaska 1997)).

[16]   AS 18.66.100(b)(1) (emphasis added).

[17]   AS 18.66.100(b)(2) (emphasis added).

basis, as did the modification at issue here. Claims of factual error in a final order are subject to appeal; they are not ordinarily subject to relitigation.

In sum, a court's authority to modify or dissolve a final and unappealed long-term protective order to reflect changes in circumstance does not authorize the court to change or eliminate the factual findings on which the order was predicated. We therefore vacate the superior court's added language in this case explaining its different view of the evidence of domestic violence on which the magistrate judge based the order.

## V. CONCLUSION

We VACATE the court's addition to paragraph C.6 of the long-term protective order.