*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| SOCIETE FINANCIAL, LLC, d/b/a Alaska ATM Service, and JAMES DAINIS, | ) ) ) | Supreme Court No. S-18276 |
| | ) ) | Superior Court No. 3AN-20-06869 CI |
| Appellants, | ) ) | |
| | ) | O P I N I O N |
| v. | ) ) | |
| | ) | No. 7686 – February 16, 2024 |
| MJ CORPORATION, d/b/a Shell and 15th Grill, | ) ) | |
| | ) | |
| Appellee. | ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Adam Gulkis, North Star Law Group, LLC, Anchorage, for Appellants. Stacey C. Stone, Holmes Weddle & Barcott, P.C., Anchorage, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

PATE, Justice.

## I.    INTRODUCTION

The owner of an automated teller machine (ATM) sued an ATM processor for breach of contract and conversion and also sought to pierce the corporate veil. The superior court granted summary judgment for the owner.

We reverse summary judgment as to the breach of contract claim and piercing the corporate veil because the processor raises genuine issues of material fact pertaining to those claims. We affirm the superior court's decision to grant summary judgment on the conversion claim.

## II. FACTS AND PROCEEDINGS

### A. Facts

MJ Corp. owns an ATM as part of its gas station and convenience store business. MJ Corp. supplied the ATM with the vault cash[1] dispensed to customers and charged customers a fee for each ATM transaction.

Societe Financial, LLC (Societe) provides ATM processing services under the name "Alaska ATM Service." James Dainis is the organizer, owner, sole member, and manager of Societe. Societe has processed transactions on MJ Corp.'s ATM since at least November 2014.[2] The parties agreed Societe would receive a minor portion of each transaction fee and MJ Corp. would receive the remaining portion of each transaction fee and reimbursement for the vault cash it had dispensed to customers. The parties received the agreed-upon amounts by way of electronic deposits made to their respective bank accounts through third-party processors.

In October 2019 MJ Corp. discovered that it had not been receiving electronic deposits for its full share of transaction fees and reimbursement for vault cash. MJ Corp.'s owner, Mag Choi, informed James Dainis about the missing deposits. Dainis blamed the third-party processors for the errors.

Societe then made two deposits into MJ Corp.'s bank account, totaling $5,837.60. Believing it was owed a substantially greater amount, MJ Corp. retained an

---

[1] The parties use "vault cash" to describe the money that the ATM dispenses to customers.

[2] It is not clear from the record whether MJ Corp. owned more than one ATM that was serviced by Societe. The distinction does not affect our decision. We will refer to the ATM in the singular.

attorney to investigate the remaining disputed deposits. The attorney requested an account history from Dainis for MJ Corp.'s ATM transactions. Societe provided MJ Corp. with an account history, but MJ Corp. claimed that the account history was incomplete because it omitted information for certain dates. MJ Corp.'s attorney requested an unredacted account history, but Dainis never answered the request.

## B.    Proceedings

MJ Corp. sued Societe and Dainis for breach of contract and conversion. MJ Corp. also sought to pierce Societe's corporate veil and recover damages from Dainis in his personal capacity.

In its answer Societe admitted the following: It had done business with MJ Corp. "for a number of years"; its "agreement" with MJ Corp. provided Societe with "a minor portion" of each transaction fee while MJ Corp. retained "the major portion"; MJ Corp. "furnished the vault cash that was dispensed by the ATM machines"; Societe received its share of transaction fees via electronic deposits to one or more of its bank accounts; and MJ Corp. received repayment for the vault cash it had dispensed to customers and its share of transaction fees via electronic deposits to its bank account.

MJ Corp. obtained complete, unredacted account histories for its ATM from the third-party processors that made the electronic deposits. The account histories showed that the deposits disputed by MJ Corp. had been made into bank accounts variously owned by Societe, Dainis, and two other companies also owned by or associated with Societe or Dainis.[3]   Based on the account histories, MJ Corp.

---

[3]    Societe owned Commercial ATM Services of Alaska, LLC, which was dissolved on December 20, 2017. Dainis owned Commercial ATM Services, LLC, which was dissolved on May 6, 2020.

propounded discovery requests to Societe that included 69 requests for admission under Alaska Civil Rule 36.[4]

Sixty-six of the requests sought admissions — by date, amount, and account number — that the disputed deposits had been made into bank accounts that were owned or controlled by Societe or Dainis or their associated companies. Specifically, the requests asked Societe and Dainis to admit that they had received electronic deposits into their accounts in a total amount of $58,339 between December 31, 2014 and November 18, 2019.

Societe did not respond to MJ Corp.'s requests for admission. By operation of Civil Rule 36, Societe's failure to respond resulted in the requests for admission being deemed admitted.[5] Societe did not move to withdraw the admissions.[6]

MJ Corp. moved for summary judgment on its breach of contract and conversion claims, relying on Societe's admissions and the accompanying affidavits from Choi and MJ Corp.'s attorney. In opposition Societe and Dainis relied on a single-page affidavit from Dainis. Neither party produced a written contract.

Dainis's affidavit contained four sworn statements:

1.      I am over 18 years of age and make the following statements based on my personal knowledge, information, and belief.

---

**4**      Alaska R. Civ. P. 36(a)-(b) (providing that party may serve requests for admissions and that matters admitted are "conclusively established" for purposes of pending actions).

**5**      Alaska R. Civ. P. 36(a) (providing that requests for admission are deemed admitted unless responded or objected to in writing within 30 days).

**6**      Alaska R. Civ. P. 36(b) (providing that court may permit withdrawal or amendment of admission "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining the action or defense on the merits").

2. Plaintiff's contract with either Societe or a payment processor requires Plaintiff to assert disputes related to ATM funds within 30 days of the disputed transfer or lack thereof.

3. Societe has not intentionally prevented Plaintiff from receiving ATM funds to which Plaintiff is entitled.

4. Plaintiff's calculation of damages is incorrect.

Societe and Dainis argued they had raised a genuine issue of material fact that precluded MJ Corp.'s ability to recover damages for breach of contract, pointing to the alleged term of the agreement requiring MJ Corp. to assert any dispute related to ATM funds within 30 days. Societe and Dainis also argued they had raised a genuine issue of material fact that precluded summary judgment on the conversion claim, relying on Dainis's sworn statement that Societe had not intentionally prevented MJ Corp. from receiving ATM funds to which it was entitled.

The superior court granted MJ Corp.'s motion for summary judgment without specifying the claims to which it applied, stating only that "it is hereby ordered that the motion is GRANTED, there are no genuine issues of material fact and plaintiff is entitled to judgment as a matter of law." The court also awarded MJ Corp. damages and interest in the amount of $59,274.40. Societe and Dainis sought reconsideration, which was denied. The court entered its final judgment against Societe and Dainis, awarding MJ Corp. $71,976.54 in damages, interest, attorney's fees, and costs.

Societe and Dainis appeal.

## III.  STANDARD OF REVIEW

We review appeals from summary judgment de novo.[7]  Contract interpretation is a question of law that is also subject to de novo review.[8]  Under de novo review, we apply our independent judgment, "adopting the rule of law most persuasive in light of precedent, reason, and policy."[9]

## IV.  DISCUSSION

In granting summary judgment the superior court did not specify the claims it was resolving or explain its reasoning.  If a trial court grants summary judgment "without stating its reasons," then we "presume that the court ruled in the movant's favor on all of the grounds stated."[10]  Under these circumstances we will consider the court's order to have resolved all claims in MJ Corp.'s favor, including breach of contract, conversion, and piercing the corporate veil.

### A.  Summary Judgment Standard

Alaska's summary judgment standard is well established.[11]  "A party is entitled to summary judgment only if there is no genuine issue of material fact and if the party is entitled to judgment as a matter of law."[12]  "[S]ummary judgment is appropriate only when no reasonable person could discern a genuine factual dispute on

---

[7]  *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 516 (Alaska 2014).

[8]  *Hahn v. GEICO Choice Ins. Co.*, 420 P.3d 1160, 1166 (Alaska 2018).

[9]  *Kimp v. Fire Lake Plaza II, LLC*, 484 P.3d 80, 86 (Alaska 2021) (quoting *Hahn*, 420 P.3d at 1166).

[10]  *Windel v. Matanuska-Susitna Borough*, 496 P.3d 392, 398 n.23 (Alaska 2021) (quoting *Guerrero ex rel. Guerrero v. Alaska Hous. Fin. Corp.*, 123 P.3d 966, 974 (Alaska 2005)).

[11]  *Christensen*, 335 P.3d at 517 (clarifying and reaffirming elements of "Alaska's longstanding summary judgment standard").

[12]  *ConocoPhillips Alaska, Inc. v. Williams Alaska Petrol., Inc.*, 322 P.3d 114, 122 (Alaska 2014).

a material issue"[13] when "reading the record in the light most favorable to the non-moving party and making all reasonable inferences in its favor."[14]

A material fact "is one upon which resolution of an issue turns."[15] But "[a] non-moving party cannot create a genuine issue of material fact merely by offering admissible evidence[16] — the offered evidence must not be too conclusory, too speculative, or too incredible to be believed, and it must directly contradict the moving party's evidence."[17] The summary judgment standard does not permit us, "on the limited evidence presented at the summary judgment stage, to make trial-like credibility determinations, [or] conduct trial-like evidence weighing."[18] We may assess whether the evidence is reasonable, but we do not "apply substantive evidentiary standards."[19]

We evaluate motions for summary judgment by following a burden-shifting procedure. The movant "has the initial burden of proving, through admissible evidence, that there are no [genuine] disputed issues of material fact and that the moving party is entitled to judgment as a matter of law."[20] If the movant is successful, then "the

---

[13] *Christensen*, 335 P.3d at 520.

[14] *Id.* (quoting *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1033 (Alaska 2003)).

[15] *Id.* at 519.

[16] The admissible evidence we consider for purposes of a motion for summary judgment includes "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Alaska R. Civ. P. 56(c). "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Alaska R. Civ. P. 56(e).

[17] *Christensen*, 335 P.3d at 516.

[18] *Id.* at 520.

[19] *Id.* at 519 (declining to follow federal practice incorporating substantive evidentiary standards of proof into summary judgment).

[20] *Id.* at 517 (alteration in original) (quoting *Mitchell v. Teck Cominco Alaska Inc.*, 193 P.3d 751, 760 n. 25 (Alaska 2008)).

burden shifts to the non-moving party 'to set forth specific facts showing that he could produce evidence reasonably tending to dispute or contradict the movant's evidence and thus demonstrate that a material issue of fact exists.' "[21] Although Alaska has a "lenient standard for withstanding summary judgment,"[22] the non-moving party "may not rest upon . . . mere allegations or denials" and instead "must set forth specific facts showing that there is a genuine issue for trial."[23]

**B.** **A Genuine Issue Of Material Fact Precludes Summary Judgment For Breach Of Contract.**

Construing the evidence in the light most favorable to Societe and Dainis and making all reasonable factual inferences in their favor, we conclude that there is a genuine issue of material fact with respect to the breach of contract claim.

To carry its initial burden, MJ Corp. was required to submit admissible evidence establishing a prima facie claim for breach of contract.[24] Establishing breach of contract requires "proof of the existence of a contract, breach, and damages."[25] In the absence of an express contract, an implied contract may still exist "where the court finds from the surrounding facts and circumstances that the parties intended to make a contract but failed to articulate their promises."[26] For either an express or implied

---

[21]     *Id.* (quoting *State, Dep't of Highways v. Green*, 586 P.2d 595, 606 n.32 (Alaska 1978)).

[22]     *Id.* at 520 (quoting *Shaffer v. Bellows*, 260 P.3d 1064, 1069 (Alaska 2011)).

[23]     Alaska R. Civ. P. 56(e).

[24]     *See Himschoot v. Dushi*, 953 P.2d 507, 509-10 (Alaska 1998).

[25]     *Brooks Range Petrol. Corp. v. Shearer*, 425 P.3d 65, 79 (Alaska 2018).

[26]     *Labrenz v. Burnett*, 218 P.3d 993, 998 (Alaska 2009) (quoting *Martens v. Metzgar*, 524 P.2d 666, 672 (Alaska 1974)).

contract, "[a]n agreement is unenforceable if its terms are not reasonably certain."[27]  A contract's terms are reasonably certain "if they provide a basis for determining the existence of a breach and for giving an appropriate remedy."[28]  "The contract amount, in particular, must be definite and specific."[29]

MJ Corp. produced undisputed admissible evidence of an implied contract with Societe.  Societe admitted in its answer that it "did business" with MJ Corp. "for a number of years under an agreement."[30]  Societe admitted that it "processed the ATM transactions for [MJ Corp.'s] business in exchange for payment of a minor portion of the transaction fee, which was paid by the ATM customer" and that MJ Corp. "received the major portion of the transaction fee and furnished the vault cash that was dispensed by the ATM machines."  Furthermore, Dainis's affidavit confirmed the existence of "[MJ Corp.'s] *contract* with . . . Societe." (Emphasis added.)

Societe thus admitted to the contract's relevant provisions, including (1) the services to be performed; (2) the form of compensation; and (3) an amount of compensation.[31]

Societe argues that MJ Corp.'s failure to establish the precise percentage split of ATM transaction fees makes the agreed-upon amount uncertain, and thus

---

[27]  *See Davis v. Dykman*, 938 P.2d 1002, 1006 (Alaska 1997) (finding settlement offer's method of calculating attorney's fees was too indefinite to constitute valid offer).

[28]  *Young v. Kelly*, 334 P.3d 153, 157 (Alaska 2014) (quoting *Hall v. Add-Ventures, Ltd.*, 695 P.2d 1081, 1087 (Alaska 1985)).

[29]  *Id.* (quoting *Magill v. Nelbro Packing Co.*, 43 P.3d 140, 142 (Alaska 2001)).

[30]  The admissions made in the answer only applied to Societe.  Dainis denied any involvement in the contract with MJ Corp.

[31]  "Generally 'admissions made in the pleadings are conclusively established.' " *Fletcher v. Fletcher*, 433 P.3d 1148, 1152 (Alaska 2018) (quoting *Darnall Kemna & Co. v. Heppinstall*, 851 P.2d 73, 76 (Alaska 1993)).

precludes the existence of an implied contract. But the third-party processor account histories, which MJ Corp. subpoenaed from the processors, appear to establish that, over a five-year period involving hundreds of transactions, there was a consistent percentage split of the minor portion of each transaction fee deposited into accounts owned by Societe and the major portion of each transaction fee deposited into the account owned by MJ Corp. The account histories thus evince a standard course of dealing between the parties that is sufficiently definite and specific to support the existence of an implied contract.[32]

MJ Corp. also made a prima facie showing of breach. Whether a material breach of contract has occurred "is a question 'of degree, centering on the reasonable expectations of the parties, . . . result[ing] in the other party not receiving substantially what that party bargained for.' "[33] "[O]rdinarily the question of materiality must be left to the factfinder. But in some cases the breached provision is so obviously central to the purpose of the contract that materiality can be determined as a matter of law."[34]

The third-party processor account histories clearly demonstrate a violation of the parties' agreement: At various points in time, Societe received deposits for reimbursement of vault cash and/or the major portions of transaction fees that the agreement specified should have been deposited in MJ Corp.'s bank account.[35] Societe

---

[32] *See Reeves v. Alyeska Pipeline Serv. Co.*, 56 P.3d 660, 666 (Alaska 2002) (upholding implied-in-fact disclosure contract because promise was "sufficiently definite as a matter of law to establish an enforceable disclosure agreement").

[33] *State, Dep't of Nat. Res. v. Alaskan Crude Corp.*, 441 P.3d 393, 401 (Alaska 2018) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 241 (AM. L. INST. 1981)).

[34] *Alaskan Crude Corp.*, 441 P.3d at 401.

[35] MJ Corp. obtained the third-party account histories pursuant to a subpoena. The account histories are record depositions certified by records custodians. They are thus admissible evidence for the purposes of Alaska Civil Rule 56. Alaska R.

admitted in its answer that MJ Corp. provided cash for its ATM, and thus the cash settlements were supposed to be deposited with MJ Corp. as reimbursement for cash withdrawals from its ATM. By failing to respond to MJ Corp.'s requests for admission, Societe is deemed to have admitted to receiving the full amount of the disputed deposits, or $58,339. Based on these admissions, we conclude that MJ Corp. pointed to undisputed evidence establishing breach of an implied contract with Societe. Even though the account histories provide only circumstantial evidence of breach, a movant may make out a prima facie showing of entitlement to summary judgment if "the record contain[s] enough circumstantial evidence" to satisfy the initial burden.[36]

But as to the third and final element of breach of contract, we conclude Societe and Dainis presented admissible evidence raising a genuine dispute of material fact. Dainis swore that "[MJ Corp.'s] contract with either Societe or a payment processor requires [MJ Corp.] to assert disputes related to ATM funds within 30 days of the disputed transfer or lack thereof." MJ Corp.'s breach of contract claim thus turns on whether the evidence Societe submitted on this point is too conclusory, speculative, or incredible to be believed.[37] We determine that a reasonable person could believe Dainis's assertion and conclude it created a genuine dispute as to a material fact.

---

Civ. P. 56(c) ("Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.").

[36]     *See Waldroup v. Lindman*, 28 P.3d 293, 300 (Alaska 2001) (holding that movant offered sufficient circumstantial evidence to make out prima facie case for summary judgment on contractual interference claim because, although party provided no sworn affidavit, party acted in good faith according to its direct financial interest).

[37]     *See Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 520 (Alaska 2014) ("[T]he only questions to be answered at the summary judgment stage are whether a reasonable person could believe the non-moving party's assertions and whether a reasonable person could conclude those assertions create a genuine dispute as to a material fact.")

Dainis swore the statements in his affidavit were based on his personal knowledge.[38] Dainis then affirmed the existence of a specific contract provision that required MJ Corp. to raise any dispute within 30 days of the contested transaction. Drawing all reasonable inferences in favor of Societe and Dainis, a contract provision of this sort would limit the time period for MJ Corp. to recover damages.[39] Dainis's affidavit contains evidence of a material fact because the provision cited therein affects damages, an essential element of breach of contract.

But to create a *genuine issue* of material fact, Dainis's affidavit must also not be "too conclusory, too speculative, or too incredible to be believed, and it must directly contradict the moving party's evidence."[40] "There is no principled reason why the parties to a contract may not promise to perform only if an action is brought within a specified time."[41] Dainis's affidavit provides evidence of such a provision, one

---

[38] *Hoendermis v. Advanced Physical Therapy, Inc.*, 251 P.3d 346, 352 (Alaska 2011) (stating that parties can submit affidavits supporting or opposing motion for summary judgment provided they are "based upon personal knowledge" (quoting *Broderick v. King's Way Assembly of God Church*, 808 P.2d 1211, 1215 (Alaska 1991))).

[39] *See Christensen*, 335 P.3d at 519 ("[A] material fact is one upon which resolution of an issue turns.").

[40] *Id.* at 516; *see also Israel v. State, Dep't of Corr.*, 460 P.3d 777, 785 (Alaska 2020) (holding that inmate's claim that he could see poltergeists was "too incredible to be believed" and was "insufficient to defeat motion for summary judgment" (quoting *Christensen*, 335 P.3d at 516)).

[41] 14 RICHARD A. LORD, WILLISTON ON CONTRACTS § 42:12 (West 4th ed. 2023) ("Bringing the suit within this time, when not contrary to public policy, is then a condition of the plaintiff's right to recover. The plaintiff has a cause of action as soon as the necessary facts, enabling it to bring suit, occur, but in order to enforce its claim, it is also necessary that the contractually agreed time limit has not expired."); *see also McDonnell v. State Farm Mut. Auto. Ins. Co.*, 299 P.3d 715, 728 (Alaska 2013) ("Courts have generally held that parties may contractually agree to a shorter limitations period if the contractual limitations provision is unambiguous, reasonable, and does not violate statutes or public policy . . . .").

designed to limit Societe's liability by requiring MJ Corp. to raise any disputes within 30 days of the transaction. That such a term could have existed in MJ Corp.'s contract with Societe is not "too incredible to be believed by reasonable minds."[42]

MJ Corp. argues that Societe and Dainis "failed to provide any evidence of any such contract term beyond a self-serving affidavit," thus making the evidence "too conclusory."[43] Dainis's affidavit is brief and to the point, but because it puts forth admissible evidence of a specific material fact, it is not too conclusory.[44] A single genuine issue of material fact bars summary judgment.[45] Because Dainis's affidavit directly contradicts MJ Corp.'s allegation that Societe owes MJ Corp. damages under the contract, it raises a genuine issue of material fact regarding the essential element of damages.[46] Because of this genuine issue of material fact, it was error to grant summary judgment on the contract claim.

### C. No Genuine Issues Of Material Fact Remain As To The Conversion Claim, And The Court Did Not Err In Granting Summary Judgment.

"Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."[47] A plaintiff

---

[42] *See Christensen*, 335 P.3d at 520 (quoting *Wilson v. Pollet*, 416 P.2d 381, 384 (Alaska 1966)).

[43] *Id.* at 516.

[44] Alaska R. Civ. P. 56(e) ("[T]he adverse party's response [to a motion for summary judgment], by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial." (emphasis added)).

[45] *See Airline Support, Inc. v. ASM Cap. II, L.P.*, 279 P.3d 599, 611 (Alaska 2012) (Stowers, J., concurring) ("If there is a single genuine issue of material fact, summary judgment is precluded.").

[46] *See Christensen*, 335 P.3d at 516.

[47] *Silvers v. Silvers*, 999 P.2d 786, 793 (Alaska 2000) (quoting *Alaska Cont'l, Inc. v. Trickey*, 933 P.2d 528, 536 (Alaska 1997)); *see also* Alaska Pattern Jury Instructions – Civ. 18.02.

seeking to establish a conversion claim must first make out a prima facie claim: "(1) that she had a possessory interest in the property; (2) that the defendant interfered with the plaintiff's right to possess the property; (3) that the defendant intended to interfere with plaintiff's possession; and (4) that the defendant's act was the legal cause of the plaintiff's loss of the property."[48]

With regard to the first element of conversion, MJ Corp. needed to establish a possessory interest in its disputed deposits.[49] Choi affirmed that MJ Corp. had a possessory interest in the "major portion of the transaction fee[s] and . . . the vault cash that MJ Corp. supplied." Choi's statement repeated these factual allegations from MJ Corp.'s complaint, which Societe admitted in its answer.[50] Societe thus admitted that MJ Corp. had a possessory interest in all the vault cash it had supplied and a "major portion" of each transaction fee. Based on Societe's admissions we conclude that MJ Corp. established admissible evidence of a possessory interest in the vault cash and transaction fees constituting the disputed deposits in an amount of $58,339.

Societe argues that the evidence before the superior court was insufficient to create an inference that the disputed deposits were owed to MJ Corp. But Societe's argument ignores the third-party processor account histories.[51] As explained above, the histories clearly demonstrate that, contrary to the parties' agreement, Societe received deposits for reimbursement of vault cash and the major portions of transaction fees that should have been deposited in MJ Corp.'s bank account.

---

[48]     *Silvers*, 999 P.2d at 793.

[49]     *See McKibben v. Mohawk Oil Co.*, 667 P.2d 1223, 1229 (Alaska 1983) (adopting view that immediate or future possessory interests are sufficient to establish possession element of claim for conversion), *abrogated on other grounds by Wien Air Alaska v. Bubbel*, 723 P.2d 627, 631 n.4 (Alaska 1986).

[50]     These admissions applied only to Societe. *See supra* note 31.

[51]     *Supra* note 35.

Under the second element of conversion, MJ Corp. needed to show that Societe interfered with MJ Corp.'s possessory interest. We have recognized that money as well as personal property can be the object of conversion.[52] Receiving property is sufficient to establish interference.[53] We thus consider whether MJ Corp. can point to admissible evidence establishing that Societe received money belonging to MJ Corp.

Societe and Dainis point out that the account histories do not show who "conducted" the disputed deposits, arguably raising a genuine dispute as to interference. Societe and Dainis argue that the disputed deposits could have been caused by "cyber theft," "software malfunctions," or mistakes by other ATM processors. But by failing to respond to MJ Corp.'s requests for admission, Societe admitted to *receiving* the disputed deposits listed on the account histories.

Furthermore, except for the $5,837.60 that Societe returned in November 2019, neither Societe nor Dainis returned any money to MJ Corp. MJ Corp. does not have access to the disputed deposits made to bank accounts owned by Societe and Dainis. Under these circumstances, even assuming that Societe did not direct the disputed deposits to its own accounts, MJ Corp. can still make out the element of interference by pointing to the requests for admission, which conclusively show that Societe received the disputed deposits. Because it is undisputed that Societe received

---

[52] *See Dressel v. Weeks*, 779 P.2d 324, 328 (Alaska 1989) (considering and affirming claim for conversion of cash money).

[53] *See* RESTATEMENT (SECOND) OF TORTS § 223 (AM. L. INST. 1965) (providing that "conversion may be committed by intentionally . . . (d) *receiving* a chattel" (emphasis added)); RESTATEMENT (SECOND) OF TORTS § 229 (AM. L. INST. 1965) (providing that "one who *receives possession* of a chattel from another with the intent to acquire for himself . . . a proprietary interest in the chattel which the other has not the power to transfer is subject to liability for conversion to a third person then entitled to the immediate possession of the chattel" (emphasis added)); *see also* Alaska Pattern Jury Instructions – Civ. 18.02 (citing RESTATEMENT (SECOND) OF TORTS § 223 (AM. L. INST. 1965)).

the disputed deposits and kept them to the exclusion of MJ Corp., there is admissible evidence that Societe interfered with MJ Corp.'s possessory interest in funds in the amount of $58,339.[54]

The third element of conversion requires a showing of intent.[55] MJ Corp. must present admissible evidence that Societe's interference was an intentional act. In describing the requisite intent for conversion we have referenced the civil pattern jury instructions, which define an " 'intentional act' as encompassing either an intent 'to interfere with the property' or knowledge on the part of the defendant to a substantial certainty 'that the act or omission would result in such interference.' "[56] A person who receives property "with the intent to acquire . . . a proprietary interest" is liable for conversion if a third party was then entitled to immediate possession of the property.[57]

---

[54] *See* RESTATEMENT (SECOND) OF TORTS § 222A(2) (AM. L. INST. 1965) (providing that the seriousness of the interference depends on "(a) the extent and duration of the actor's exercise of dominion or control; (b) the actor's intent to assert a right in fact inconsistent with the other's right of control; (c) the actor's good faith; (d) the extent and duration of the resulting interference with the other's right of control; (e) the harm done to the chattel; (f) the inconvenience and expense caused to the other").

[55] 90 C.J.S. *Trover and Conversion* § 8 (West 2023) (citing *Silvers v. Silvers*, 999 P.2d 786 (Alaska 2000)) (stating that third element requires "an intent to do some act amounting to a conversion").

[56] *Shields v. Cape Fox Corp.*, 42 P.3d 1083, 1088 n.12 (Alaska 2002) (quoting Alaska Pattern Jury Instructions – Civ. 18.03).

[57] RESTATEMENT (SECOND) OF TORTS § 229 (AM. L. INST. 1965); *see also id.* § 229 cmt. a (defining "proprietary interest" as denoting "any right of ownership of an interest in relation to the chattel which would entitle the actor to retain its possession permanently, indefinitely, or for a period of time").

Conversion does not require fault.[58] It does not require knowledge of a superior possessory interest,[59] and "a mistaken belief on the part of a defendant that [the defendant] had a right to interfere with the property does not negate intentionality."[60] For the purposes of conversion, "[t]he intention required is an intention merely to exercise a dominion or control over the chattel which in fact seriously interferes with the right of another to control it."[61]

It is clear from Societe's admissions that its receipt of the disputed deposits was accompanied by an intent to obtain a proprietary interest.[62] Put another

---

[58]    18 AM. JUR. 2D *Conversion* § 3 (West 2023) (providing that although "[t]he act constituting 'conversion' must be an intentional act, . . . it does not require wrongful intent"); *see Rollins v. Leibold*, 512 P.2d 937, 945 (Alaska 1973) (finding that bona fide purchaser of mechanical crane was liable for conversion as "an innocent converter," but holding that amount of damages was limited to value of crane plus interest and did not include lost profits).

[59]    RESTATEMENT (SECOND) OF TORTS § 229 cmt. e. (AM. L. INST. 1965) ("[O]ne receiving a chattel from a third person with intent to acquire a proprietary interest in it is liable without a demand for its return by the person entitled to possession, although he takes possession of the chattel without *knowledge or reason to know* that the third person has no power to transfer the proprietary interest.  The mere receipt of the possession of the goods under such circumstances is a conversion." (emphasis added)).

[60]    *Shields*, 42 P.3d at 1088 n.12.

[61]    RESTATEMENT (SECOND) OF TORTS § 224 cmt. c (AM. L. INST. 1965); *id* ("It is not an intention to interfere with the rights of the other; and the defendant may be liable for conversion where he has in fact exercised dominion or control, although he may be quite unaware of the existence of the rights with which he interferes.").

[62]    Summary judgment can be based on Societe's receipt of the disputed deposits alone or on its refusal of MJ Corp.'s subsequent demand that it return them. *See, e.g.*, RESTATEMENT (SECOND) OF TORTS § 229 cmt. e (AM. L. INST. 1965) (explaining that "one receiving a chattel from a third person with intent to acquire a proprietary interest in it is liable without a demand for its return by the person entitled to possession" and that "[a] subsequent refusal to surrender the chattel on demand may constitute a separate act of conversion and make the actor liable under the rule stated in

way, Societe received the disputed deposits in a manner that denoted an obvious intent to obtain a permanent "right of ownership."[63] Whether the disputed deposits were initiated by mistake through a third-party processor is irrelevant. When Societe became aware it received the disputed deposits and kept them, it received possession "pursuant to a transaction by which [one] intends to acquire for himself . . . a proprietary interest,"[64] regardless of whether it knew of MJ Corp.'s possessory interest.[65] Receipt of deposits in a bank account owned by a defendant is not "so temporary, trivial, or unimportant as not to amount to a conversion."[66] Simply put, the electronic transactions through which Societe admitted it received the $58,339 indicate to us a clear intent to obtain a proprietary interest in those funds, thus satisfying the third element of a claim for conversion.

The fourth element requires that "the defendant's act was the legal cause of the plaintiff's loss."[67] Societe and Dainis repeatedly argue that they did not control the disputed deposits being made into their own bank accounts. But as explained above, a defendant who receives money is liable for conversion if it causes interference with a superior possessory interest.[68] We again refer to the pattern jury instruction for

---

§ 237"); *compare id.* § 229, *with id.* § 237 ("One in possession of a chattel as bailee or otherwise who, on demand, refuses without proper qualification to surrender it to another entitled to its immediate possession, is subject to liability for its conversion.").

[63]     *Id.* § 229 cmt. a.

[64]     *Id.* § 229 cmt. b.

[65]     *Id.* § 229 cmt. c.

[66]     *Id.* § 229 cmt. b; *see also id.* § 222A cmt. a (explaining that conversion originated as remedy against finders of lost goods who refused to return them to owner).

[67]     *Silvers v. Silvers*, 999 P.2d 786, 793 (Alaska 2000).

[68]     *Supra* note 61.

conversion: The defendant's conduct must be a "substantial factor" in causing the plaintiff's loss.[69] This requirement is akin to causation in the context of negligence.[70]

Societe's admissions are admissible evidence showing that Societe received the disputed deposits and kept them in bank accounts to the exclusion of MJ Corp, thus substantially causing MJ Corp. to suffer a loss. Having established the fourth and final element of conversion, MJ Corp. satisfied its burden as the moving party by making out its prima facie claim for conversion.

The burden then shifted to Societe to put forth admissible evidence raising a genuine dispute of material fact.[71] The only evidence submitted by Societe was Dainis's affidavit. The affidavit is admissible evidence, but it is "too conclusory" to present a genuine dispute of material fact regarding MJ Corp.'s claim for conversion.[72]

Dainis's affidavit states that "Societe has not intentionally prevented Plaintiff from receiving ATM funds to which Plaintiff is entitled." But the question is not whether Societe intentionally prevented MJ Corp. from receiving ATM funds; the relevant inquiry is whether Societe intended to exercise dominion and control over the

---

[69] Alaska Pattern Jury Instructions – Civ. 18.02; *Burton v. Fountainhead Dev., Inc.*, 393 P.3d 387, 399 (Alaska 2017) (describing substantial factor test), *as amended on reconsideration* (May 9, 2017).

[70] *See Vincent ex rel. Staton v. Fairbanks Mem'l Hosp.*, 862 P.2d 847, 851 (Alaska 1993) ("As a general rule, Alaska follows the 'substantial factor test' of causation . . . derived from the Restatement (Second) of Torts § 431 (1965) . . . ."); *but see* 90 C.J.S. *Trover and Conversion* § 4 (West 2023) (explaining that "[n]either proximate causation nor benefit to a party converting property is an element of conversion").

[71] *West v. City of St. Paul*, 936 P.2d 136, 140 (Alaska 1997) ("To avoid summary judgment once a movant has made out a prima facie case, the non-movant must set forth specific facts reasonably tending to dispute or contradict the movant's evidence and demonstrating the existence of a material issue of fact.").

[72] *See Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 516 (Alaska 2014).

disputed deposits.[73] The affidavit is devoid of specific facts in this regard. Dainis does not allege that he reviewed the account histories and discovered that the deposits in excess of the agreement *were not in fact* diverted to accounts within Societe's control. Dainis does not dispute that he knew of the transactions. And Dainis does not dispute that Societe intended to keep the money once it was deposited. Nor does Dainis's affidavit allege any specific facts to support the inference that Societe or Dainis were entitled to any portion of the disputed deposits. Critically, nothing in the record supports the inference that Societe possessed an ownership interest in the disputed deposits establishing an entitlement to their possession. As to these points, we will not read more into the affidavit than what it plainly states.[74]

Dainis's affidavit is insufficient to defeat a summary judgment motion. The affidavit does not create a genuine issue of material fact regarding conversion because it does not "directly contradict" MJ Corp.'s admissible evidence showing that Societe intended to exercise dominion and control over the disputed deposits to which MJ Corp had a possessory interest.[75] It is simply too conclusory and devoid of specific facts. MJ Corp. satisfied its prima facie burden for summary judgment, which Societe did not successfully rebut. There is no genuine issue of material fact regarding MJ Corp.'s claim for conversion and thus it was proper for the superior court to grant summary judgment.

---

[73]    *Supra* note 55.

[74]    *See Christensen*, 335 P.3d at 517 ("Once the moving party has made that showing [of no genuine dispute of material fact], the burden shifts to the non-moving party 'to set forth specific facts showing that he could produce evidence reasonably tending to dispute or contradict the movant's evidence and thus demonstrate that a material issue of fact exists.' " (quoting *State, Dep't of Highways v. Green*, 586 P.2d 595, 606 n.32 (Alaska 1978))).

[75]    *Id.* at 516.

**D. It Was Error To Grant Summary Judgment As To Piercing The Corporate Veil.**

MJ Corp. sought to recover the disputed deposits from Dainis personally, by piercing the corporate veil of Societe and other entities owned by Dainis. The superior court granted summary judgment without specifying the claims or providing any reasoning for its decision. We thus presume the court ruled in MJ Corp.'s favor on all grounds stated,[76] including piercing the corporate veil.[77] Because the final judgment effectively provides that MJ Corp. may recover from Dainis personally, the court must necessarily have granted summary judgment with respect to piercing Societe's corporate veil and the other entities owned by Dainis.

Absent "exceptional circumstances" we "recognize and uphold 'the principles that the corporation exists as a separate legal entity and that owner liability for the debts of the corporation is limited.' "[78] We have identified two situations in which the veil-piercing doctrine may apply.[79]

---

[76]     *Windel v. Matanuska-Susitna Borough*, 496 P.3d 392, 398 n.23 (Alaska 2021).

[77]     We are aware of only one case, an unpublished federal decision, applying our veil-piercing doctrine to an LLC  *Ryll Int'l, LLC. v. Drake Bros. Trucking, Inc.*, No. 8-CV-0060, 2010 WL 11619558, at *8-10 (D. Alaska Aug. 6, 2010). Given that the doctrine was litigated by the parties and we presume the superior court ruled in MJ Corp.'s favor, we assume that our veil-piercing doctrine and existing caselaw apply to LLCs for purposes of this appeal only.

[78]     *L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1125 (Alaska 2009) (quoting *Pyramid Printing Co. v. Alaska State Comm'n for Hum. Rts.*, 153 P.3d 994, 1000 (Alaska 2007)).

[79]     *Brown v. Knowles*, 307 P.3d 915, 929 (Alaska 2013) (providing "that there are two alternate tests for piercing the corporate veil in Alaska, one dealing with mere instrumentality and the other with misconduct").

First, veil piercing may be appropriate "if the corporate form is used to defeat public convenience, justify wrong, commit fraud, or defend crime."[80] This "misconduct standard of veil piercing 'exists to prevent a party from obtaining an advantage through deceptive or manipulative conduct.' "[81] The "misconduct standard" is inapposite to this case. No admissible evidence in the record suggests that Dainis manipulated Societe's corporate form to "justify wrong, commit fraud, or defend crime."[82]

Second, we have recognized that the corporate veil may be pierced if a shareholder uses the corporate form as an "alter ego" or "mere instrumentality."[83] In *Uchitel Co. v. Telephone Co.* we laid out six factors for evaluating whether to impose personal liability on a shareholder under the alter ego/mere instrumentality standard:

> (a) whether the shareholder sought to be charged owns all or most of the stock of the corporation; (b) whether the shareholder has subscribed to all of the capital stock of the corporation or otherwise caused its incorporation; (c) whether the corporation has grossly inadequate capital; (d) whether the shareholder uses the property of the corporation as his own; (e) whether the directors or executives of the corporation act independently in the

---

[80]    *Id.* (quoting *L.D.G.*, 211 P.3d at 1125).

[81]    *Pister v. State, Dep't of Revenue*, 354 P.3d 357, 364 (Alaska 2015) (quoting *Elliott v. Brown*, 569 P.2d 1323, 1326 (Alaska 1977)).

[82]    *See Pister*, 354 P.3d at 364 (applying misconduct standard when evidence supported finding that shareholder exploited corporation's balance sheet to camouflage tax evasion).

[83]    *Brown v. Knowles*, 307 P.3d at 929. We are mindful that LLCs have members who hold ownership interests rather than shareholders who hold stock, *see Duffus v. Baker*, 513 P.3d 264, 266-67 (Alaska 2022), and that different factors may justify piercing an LLC's veil as opposed to a corporation's veil. *See Kaycee Land & Livestock v. Flahive*, 46 P.3d 323, 328 (Wyo. 2002) (explaining that "many of the organizational formalities applicable to corporations do not apply to LLCs," counseling in favor of a different test). As explained in footnote 77 above, we apply our veil-piercing caselaw to MJ Corp.'s claims against Societe for purposes of this appeal only.

interest of the corporation or simply take their orders from the shareholder in the latter's interest; (f) whether the formal legal requirements of the corporation are observed.[84]

" 'It is not necessary for all six factors to be satisfied before instrumentality can be found,' but the factors help the fact-finder to decide whether the evidence favors piercing the veil."[85] We have also explained that "specific findings under the mere instrumentality test are needed to pierce the corporate veil."[86]

Dainis admitted that he was "100% owner, manager, organizer and agent" of Societe. Yet on the facts as asserted on summary judgment, the mere presence of the first and second *Uchitel* factors is inadequate evidence to support piercing Societe's corporate veil.[87] MJ Corp. pointed to no admissible evidence showing the presence of the other *Uchitel* factors. Because there is insufficient evidence on summary judgment to pierce Societe's corporate veil, it was error to summarily hold Dainis personally liable.

MJ Corp. also sought to recover a portion of the disputed deposits from bank accounts associated with a subsidiary company of Societe, Commercial ATM Services of Alaska, LLC, and a separate company owned by Dainis, Commercial ATM

---

[84]    646 P.2d 229, 235 (Alaska 1982).

[85]    *L.D.G.*, 211 P.3d at 1126 (quoting *Nerox Power Sys., Inc. v. M-B Contracting Co.*, 54 P.3d 791, 802 (Alaska 2002)).

[86]    *Gold Dust Mines, Inc. v. Little Squaw Gold Mining Co.*, 299 P.3d 148, 169 (Alaska 2012) (reversing award and remanding for specific findings under mere instrumentality test).

[87]    *See Murat v. F/V Shelikof Strait*, 793 P.2d 69, 77 (Alaska 1990) (explaining that because second factor "is likely to be present in almost all 'piercing' cases involving small corporations, we do not find it so persuasive as to justify judgment against a shareholder/defendant as a matter of law"); *cf. Uchitel*, 646 P.2d at 235 (denying piecing claim when evidence supported presence of only first factor).

Services, LLC. There is insufficient evidence on summary judgment to pierce the corporate veils of these entities as well.[88]

Finally, MJ Corp. sought to recover a portion of the disputed deposits ($28,465.40) from bank accounts associated with Societe and Alaska ATM Service. Because Societe, a party to this case, admitted it does business under the name Alaska ATM Service, MJ Corp. may recover the disputed deposits made into these bank accounts.

## V. CONCLUSION

We REVERSE the order granting summary judgment on MJ Corp.'s breach of contract claim. We also REVERSE the order piercing Societe's corporate veil. We AFFIRM the superior court's order granting summary judgment on MJ Corp.'s claim for conversion. We REMAND for further proceedings consistent with this opinion.

---

[88] Commercial ATM Services of Alaska, LLC and Commercial ATM Services, LLC were dissolved before MJ Corp. initiated this case. MJ Corp. did not name these entities in its complaint. If, on remand, MJ Corp. still seeks to recover from these entities, then MJ Corp. should move to amend its complaint to include these entities as defendants. *See Gossman v. Greatland Directional Drilling, Inc.*, 973 P.2d 93, 98-99 (Alaska 1999) (finding that plaintiff may sue dissolved corporation on cause of action that arises after dissolution and that statute providing for such suits does not impose statute of limitations).